ALFRED G. BRIMM, ROAD SUPERVISOR, APPELLANT, *v.* THOMAS W. JONES, RESPONDENT.

(See *Brimm* v. *Jones*, 29 L. R. A. 97.)

DUE PROCESS OF LAW.—EQUAL PROTECTION OF THE LAW.—2 Comp. Laws 1888, § 2087, providing that " any person who drives a herd of horses, mules, asses, cattle, sheep, goats or swine over a public highway where such highway is constructed on a hillside, shall be liable for all damage done by such animals in destroying the banks or rolling rocks into or upon such highway," does not deprive a person of property without due process of law, nor deny to any person the equal protection of the laws within the inhibition of the 14th amendment of the constitution of the United States.

(No. 534. Decided March 16, 1895. 39 P. R. 825.)

APPEAL from the District Court of the Third Judicial District. Hon. Samuel A. Merritt, *Judge.*

Action by Alfred G. Brimm, as road supervisor, against Thomas W. Jones. This action was begun in the justice

court, Echo precinct, Summit county, Utah. There was a demurrer to the complaint, which was overruled, and judgment was afterwards duly entered for the sum of $10 and $9.50 costs. Thereupon defendant appealed to the district court, where the demurrer was sustained and the complaint dismissed. From the judgment dismissing the complaint, plaintiff appeals. *Reversed.*

*Mr. David B. Tewksbury (Messrs. Williams, Van Cott & Sutherland, of counsel), for appellant.*

*Messrs. Richards & Richards, for respondent.*

Respondent claims that the section of the statute under which this action was brought is void, because it contravenes the 14th amendment to the constitution of the United States, which provides that no state shall "deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." This provision of the constitution applies to the territories as well as to the states. U. S. Rev. Stat. § 1891. The act is unconstitutional, as being within the constitutional inhibition found in the 14th amendment, and also it is not within the general police power of the territory. "Under the mere guise of police regulations, personal rights and private property cannot be arbitrarily invaded, and the determination of the legislature is not final or conclusive." *In re Jacobs,* 98 N. Y. 98; S. C. 50 Am. Rep. 648; *People* v. *Budd,* 117 N. Y. 1; S. C. 15 Am. St. Rep. 460. The act is unconstitutional because it deprives a certain class of persons of their property without due process of law and denies them the equal protection of the law. *Hurtado* v. *California,* 110 U. S. 558; Cooley's Const. Lim. p. 433; *Pearson* v. *Yewdall,* 24 L. Ed. Sup. Ct. Rep. pp. 436-7 note; *Bank* v. *Cooper,* n. 24 Am. Dec. 537-545; Miller on

the Const. pp. 661–665. This is not an open question in this territory. In the cases of *Jensen* v. *U. P. Ry. Co.*, and *Shaw* v. *Utah Northern Ry. Co.*, 6 Utah, 253, this court decided that the following act was unconstitutional: Any corporation operating a railway or railroad within this territory, which shall injure or kill any live stock, by running any engine * * * over or against any such live stock shall be liable to the owner or owners of such live stock for the damage sustained * * * by reason of such injuring or killing. *Cottrell* v. *U. P. Ry. Co.*, 21 Pac. Rep. 417; *Railroad Co.* v. *Parks*, 32 Ark. 131; *Zeigler* v. *Railroad Co.*, 58 Ala. 595; *Railroad Co.* v. *Lackey*, 78 Ill. 55; *Oregon Ry. & Nav. Co.* v. *Smalley*, 23 Pac. Rep. 1009.

See, also: *Birmingham Mineral Ry. Co.* v. *Parsons* (Ala.), 13 Southern, 602; *R. G. W. Ry. Co.* v. *Chambertin* (Col.), 34 Pac. 1113; *R. G. W. Ry. Co.* v. *Vaughn*, 34 Pac. 264; *State* v. *Devine* (N. C.), 4 Southeastern, 447; *Ohio & Miss. Ry. Co.* v. *Lackey*, 78 Ill. 55; *Health Dept.* v. *Rector*, 17 N. Y. Supp. 510; *East Kingston* v. *Towle*, 48 N. H. 57. A city ordinance of Los Angeles, making it a misdemeanor for a contractor to employ any person to work more than eight hours a day, or to employ Chinese labor where the work was to be performed under any contract with the city, was held unconstitutional and void and not a valid exercise of the police power. *Ex parte Kuback*, 85 Cal. 274. A statute which makes the affidavit of the owner of stock killed or maimed on a railroad track conclusive evidence of the amount of damages sustained by the owner does not provide due process of law, and is therefore unconstitutional. *Savannah, etc., Co.* v. *Geiger*, 21 Fla. 669. A statute which makes the treasurer's deed conclusive evidence of the regularity of all prior tax proceedings is void, because it deprives the owner of his property without due process of law, so far as respects the essential prerequisites for the exercise of the

taxing power. *McCready* v. *Sexton*, 29 Ia. 356. A statute which provides that the rates of charges for passengers and freights recommended and published by a state railroad commission shall be final and conclusive evidence as to what are equal and reasonable, and that there can be no judicial inquiry as to the reasonableness of such rates, deprives a railway company of its property without due process of law. *Chicago, etc., Ry. Co.* v. *Minnesota,* 134 U. S. 418. Numerous instances where statutes have been held unconstitutional because they deprived persons of their rights without due process of law are given in note to *Bardwell* v. *Collins,* 20 Am. St. Rep. 556; *State* v. *Ellet,* n. 21 Am. St. Rep. 780.

In the *Slaughter-house cases,* 16 Wall. 62, it was said that "the police power is, from its nature, incapable of any exact definition or limitation;" and in *Stone* v. *Mississippi,* 101 U. S. 818, that "it is easier to determine whether particular cases come within the general scope of the police power than to give an abstract definition of the power itself which will be in all respects accurate." *Slaughter-house cases, supra; Stone* v. *Mississippi, supra; Smith* v. *Bivens,* 56 Fed. 356. In the case of *New Orleans Gas Light Co.* v. *Louisiana Gas & Heat Pro. & Manfg. Co.,* 115 U. S. 650, Mr. Justice Harlin delivered a most carefully considered and able opinion, wherein was reviewed the previous decisions of the court relating to the police power of the states, so that the police power. only comprised such subjects as pertain to the public health, the public morals and the public safety, and that it is confined within the limits of these three subjects. See, also, *Barbier* v. *Connolly,* 113 U. S. 32; *Soon Hing* v. *Crowley,* 113 U. S. 703; *U. P.* v. *DeBusk,* 3 L. R. A. 350; *Mathews* v. *St. Louis S. F. Ry. Co.* (Mo.), 24 Southwestern, 591; *Denver T. & G. Ry. Co.* v. *DeGraff,* 2 Colo. App. 2; *U. P. Ry. Co.* v. *Arthur,* Id. 139. In *Yick Wo*

v. *Hopkins,* 118 U. S. 356, the court had under consideration the following ordinance of the city of San Francisco: "It shall be unlawful, from and after the passage of this order, for any person or persons to establish, maintain, or carry on a laundry within the corporate limits of the city and county of San Francisco, without having first obtained the consent of the board of supervisors, except the same be located in a building constructed either of brick or stone." This ordinance was held unconstitutional as being in violation of the provisions of the fourteenth amendment.

SMITH, J.:

The sole question raised upon the appeal in this case is whether or not section 2087, Comp. Laws Utah 1888, is valid and constitutional. The section reads as follows: "Any person who drives a herd of horses, mules, asses, cattle, sheep, goats or swine over a public highway where such highway is constructed on a hillside, shall be liable for all damage done by such animals in destroying the banks or rolling rocks into or upon such highway." The court below decided that this section was invalid and void, and the respondent claims that it is in violation of that portion of the fourteenth amendment to the constitution of the United States which provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction, the equal protection of the laws." It is contended that this statute deprives the class of persons described in it of the equal protection of the laws, and deprives them of property without due process of law. An exhaustive argument is made in behalf of both the appellant and respondent in this case, and we have exam-

ined all the cases cited on either side. "The question whether a law be void for its repugnancy to the constitution is at all times a question of much delicacy, which should seldom, if ever, be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judg-- ment, would be unworthy of its station could it be unmindful · of the solemn obligations which that station imposes; but it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other." This was the language of Marshall, C. J., in *Fletcher* v. *Peck*, 6 Cranch, 87. It is by this rule then that we must determine ·whether the statute in this case violates the constitution. The claim on behalf of the respondent is that the act is class legislation, and denies to drovers named in it. that protection of the law which it extends to other citizens. We cannot agree with the respondent that this law is objectionable upon the ground stated.

In the case of *Allen* v. *Press Co.* (Minn.), 41 N. W. 936, S. C. 12 Am. St. Rep. 707, Justice Mitchell, of Minnesota, delivering the opinion of the court, says: "Laws public in their object may be confined to a. particular class of persons, if they be general in their application to the class to which they apply; provided the distinction is not arbitrary, and rests upon some reason of public policy growing out of the conditions. or business of such class." In Cooley, Const. Lim. (5th ed.) p. 483, the author says: "If otherwise unobjectionable, all that can be required in these cases is that the laws be general in their application to the class or locality to which they apply, and they are then public · in ˙ their character, and of their propriety and policy the legislature must judge." In the case of *Barbier* v. *Connolly*, 113 U.

S. 32, 5 Sup. Ct. 357, the supreme court of the United States used the following language: "Class legislation, discriminating against some and favoring others, is prohibited; but legislation which in carrying out a public purpose is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment." In *Gartside* v. *City of East St. Louis*, 43 Ill. 47, the supreme court of Illinois, speaking of an ordinance requiring certain specified teamsters who were engaged in hauling stones and coal through the city to pay a certain license, say: "From the extent and character of his business, these teams must have passed and repassed almost constantly. This, then, renders the repair of the streets more expensive and more necessary, from the fact that his vehicles seemed to be large and heavy. For the comfort and convenience of the citizens of the place, as well as persons not residing therein and traveling on its streets, it is necessary that they should be repaired and kept in good condition;" and the court upheld the ordinance for the reason stated. In the case of *Railway Co.* v. *Beckwith*, 129 U. S. 29, 9 Sup. Ct. 207, Mr. Justice Field, speaking for the supreme court, says: "The concluding clause of the first section of the fourteenth amendment simply requires that such legislation shall treat alike all persons brought under subjection to it. The equal protection of the law is afforded when this is accomplished." And again, on pages 30 and 31 (129 U. S., and page 207, 9 Sup. Ct.), of the same opinion, the learned judge says: "The discriminations which are open to objection are those where persons engaged in the same business are subject to different privileges, under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the law."

It is not pretended but that the statute under considera-

tion affects all drovers alike; that there is no discrimination made between persons engaged in the same line of business.    The contention of respondent is that there is a discrimination made between those persons engaged in business as drovers and those engaged in other business which requires the use of the highway, as, for instance, teamsters and other travelers, in that the latter are not required to pay for any damage that they may do to highways situated on a hillside.    It is easy to conceive that the business of drovers would be exceedingly injurious to highways situated upon a hillside if their herds pass over the ground upon and near the highway in our mountain country, inasmuch as they would cause rocks and other obstructions to be thrown into the highway, and would break down banks and otherwise specially injure the highways.    It was no doubt for this reason that the legislature required that those persons so engaged should be specially liable for all damage that they did to the highways. Whether teamsters do like injury is not for us to decide. It is in the discretion of the legislature to regulate the use of the highways, and, if they make no distinction between different persons who use them in the same way, we see no reason for complaint.

Counsel for respondent cites numerous authorities, and among others a decision of this court, to the point that statutes requiring railroad companies unconditionally to pay for stock killed by their trains are void, and have been so held under the fourteenth amendment, above quoted. These cases are not in point.    Railway companies are charged with a public duty to operate their trains, and are granted a public franchise for this purpose.    They cannot escape the duty imposed upon them towards the public, to wit, the operation of their trains.    If, then, while in the performance of this duty, and without fault, they casually destroy stock straying upon their road, it is

manifestly a deprivation of such companies of their prop-
erty without due process of law to require them abso-
lutely to pay for it, because in such case the duty of
operating the train and the duty of paying for the stock
killed are directly in conflict.    There are loose expressions
in some of the cases cited which would indicate that the
courts made some other distinction.    We think, upon the
ground stated, these cases are consistent with the view
we take of the statute under consideration.    But there is
no public requirement that drovers shall drive their herds
over highways situated on hillsides.    It is purely a matter
of individual choice, whether they do or not.    They have
a right to do so, and, if they do no injury, they are liable
to no one for anything.    It is manifest, however, that the
legislature considered that driving herds of stock of the
character described over highways situated upon a hill-
side was calculated to damage such highways.    The maxim
of the law is, " *Sic utere tuo ut alienum non laedas,*" the
legal meaning of which is, "So use your own property
as not to injure the right of another."    It is but an
enforcement of this rule that is attempted by the statute
in this case.    The rule as was stated by Lord Truro in
*Egerton* v. *Earl Brownlow,* 4 H. L. Cas. 195, is applicable to
the public in at least as full force as to individuals.    The
public own the highways, and must bear the expense of
keeping them in repair.

By this statute they simply say to the drover, who is
possessed of property which, if driven in a certain way, is
calculated to destroy the highway, that he must so use his
own property as not to destroy that of the public.    There
is no absolute liability for using the public highway, but
it is deemed probable that a use in a particular way, with
particular property, will produce a peculiar injury, and, if
such injury is produced, then the person producing it is
held liable.    We cannot see that this unjustly discrimi-

nates against such persons. On the contrary, it seems to be reasonable, fair, and just legislation as between all of the citizens. It must be held, if a case can be conceived that would justify the legislation, that that case existed when it passed, and it is certainly not difficult to conceive of the injury and wrong that it was intended to prevent by this statute. We are of the opinion that the statute is valid, and that the court below, in holding it invalid, was wrong. The judgment should be and is therefore reversed, and the case remanded for a new trial.

KING, J., concurs. BARTCH, J., dissents.