GWIN, *Appellant, v.* WAGGONER, *et al.*

Division One, May 22, 1893.

1. **Supreme Court Practice**: RES JUDICATA. A question arising on a former appeal will be deemed *res judicata* only when it must have been fairly presented to the court as necessary to a decision in the case, and directly considered and decided.

2. **Sale of Mine**: CONTRACT, INTERPRETATION OF. Plaintiff made to defendants an absolute deed for mining property. At the same time the parties executed a written agreement acknowledging part payment of the consideration and stating that the remainder was to be paid out of the proceeds of a sale to a third person then under negotiation. If no sale was made then the grantees were not to be held for further payments. The sale was completed, after which there was a supplementary agreement signed by plaintiff and others with him, reciting certain times when the deferred payments could be made. *Held* (1), that the defendants were bound to pay the residue of the purchase price only out of the proceeds of the re-sale, and (2) that they were not entitled to reserve any part of such proceeds as against the remainder of such purchase price to compensate them for expenses in developing the mine.

116  143
120  37

116  143
122  33

116  143
63a  469

116  143
147  150

*Appeal from Saline County Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED AND REMANDED.

*W. A. Alderson, Frank P. Sebree* and *Samuel Boyd* for appellant.

The trial court erred in refusing to permit the case to be passed upon by the jury; this action was contrary to the mandate on the former appeal (98 Mo. 315). The following authorities all support the position here contended for. *Hurck v. Erskine,* 50 Mo. 116; *State v. Newkirk,* 49 Mo. 472; *Overall v. Ellis,* 38 Mo. 209; *Chouteau v. Gibson,* 76 Mo. 38; *Taliaferro v. Barnett,* 47 Ark. 359; *Chambers v. Smith,* 30 Mo. 156; *McKinley v. Tuttle,* 42 Cal. 576; *Braden v. Graves,* 85 Ind. 92; *Conroy v. Iron Works,* 75 Mo. 651; Estoppel and Res Judicata, Herman, secs. 115, 116, 117.

*Gates & Wallace* and *Karnes, Holmes & Krauthoff* for respondents.

(1) The deed to Waggoner and Gates and the contract of December 12, 1879, have been adjudged to be contemporaneous instruments, and are now admitted to be such. The instruments being contemporaneous, it has been ruled, with manifest correctness, that they "are to be construed and read together as if embodied in one and the same instrument." 98 Mo. 325; *Hamilton v. Elliot,* 5 S. & R., 375; *Greenfield's Estate,* 14 Pa. St. 489; *Rogers v. Smith,* 47 N. Y. 327; *Jackson v. Dunbaugh,* 1 Johns. Cas. 95; *Campbell v. Thomas,* 42 Wis. 441; *Brownell v. Arnold,* 60 Mo. 79; *Railroad v. Atkinson,* 17 Mo. App. 484, 494. (2) The result is that "the defendants were to be held liable for the

balance of said purchase money only in the event and contingency of said sale to Chisholm." 98 Mo. 325; More than that, as the obligation was to pay "out of money arising from such sale," there was no liability on the contract until this fund had come into existence by being actually collected by the defendants. *Crowell v. Plant*, 53 Mo. 145; 1 Daniel Negotiable Instruments, [4 Ed.] secs. 509, 517; *Moody v. Cass County*, 74 Mo. 307; *Campbell v. Polk County Court*, 76 Mo. 57; *Dodge v. Coddington*, 3 Johns. 146; *Newhall v. Clark*, 3 Cush. 376. (3) It may be noted also, in passing, that no question is now made as to the binding effect of the contract of December 12, 1879. Its validity is not challenged by any pleading and but little time was devoted to proof that the plaintiff signed it without reading it or knowing its contents. However, this circumstance, even if true, would not change the binding obligation of the instrument. 98 Mo. 327, 328; *Mateer v. Railroad*, 105 Mo. 320; *Campbell v. Van Houten*, 44 Mo. App. 231; 2 Wharton on Evidence, sec. 932; *Greenfield's Estate*, 14 Pa. St. 489; *Faucett v. Currier*, 115 Mass. 20. (4) If the instrument of May 17, 1880, be construed as having made the defendants liable for the unpaid purchase money, it is necessary that it should be supported by a sufficient consideration. The rights and liabilities of the parties had long previously been fixed. The defendants were not original debtors to the plaintiff. The debt was due by another party; and even if the defendants agreed to pay it, a new consideration was necessary to support their promise. *Pfeiffer v. Kingsland*, 25 Mo. 66; *Cook v. Elliott*, 34 Mo. 586; *Williams v. Williams*, 67 Mo. 662.

MACFARLANE, J.—This is the second appeal. On the first defendants appealed from a judgment against them, and the judgment was reversed and the cause

remanded for a new trial. The opinion will be found in 98 Mo. 315.

The case was tried the second time upon the same pleadings, and at the close of all the evidence the court peremptorily instructed the jury to return a verdict for defendants, which was done and a judgment was rendered accordingly, and plaintiff appealed.

A full statement of the case will be found in the opinion by Ray, C. J., on the former appeal, but for convenience, we will briefly restate the facts. The petition charged in substance, that prior to the eleventh day of December, 1879, in consideration of $9,000, plaintiff bargained and sold to defendants one fifth interest in the "Tilden mine," situated in Chaffee county, Colorado (particularly describing it), and thereafter, on said day, by general warranty deed he conveyed the same to defendants William H. Waggoner and George P. Gates. That $1,000 cash was paid on delivery of the deed, leaving a balance due plaintiff of $8,000. "That on the seventeenth of May, 1880, the plaintiff agreed to accept, and defendants agreed to pay plaintiff the balance unpaid and due him of said consideration of said sale and conveyance of said property as aforesaid, as follows: On the seventeenth day of May, 1880, the sum of $2,500; on the fifth day of June, 1880, $4,000; on the twenty-fifth day of June, 1880, the further sum of $1,000 cash and five hundred shares of the said Tilden Mining Company of New York."

The petition charged that $2,500 and no more was thereafter paid, and judgment was prayed for the balance, being $5,000.

The defense was that the defendants were not the purchasers of the mine and that the conveyance to them was merely in the capacity of agents to facilitate a sale to other parties, then being negotiated, and that

such conveyance was coupled with a contract, that the defendants were not to be held liable for the purchase money unless such contemplated sale was consummated, and then only out of the proceeds thereof when collected.

The collateral contract relied upon by defendant was dated the day after the date of the deed, and is as follows:

"This agreement made and entered into this twelfth day of December, 1879, by and between John S. Shanks, J. A. Gwin and James W. Shumate, parties of the first part, and William H. Waggoner and Geo. P. Gates, parties of the second part, witnesseth: that said parties of the first part have this day executed and delivered deeds to said parties of the second part, conveying all their right, title and interest in and to the Samuel J. Tilden mining lode, situate in Chaffee county, Colorado. Upon delivering of said deed said parties have this day received cash payments from said second parties as follows, to-wit: said John S. Shanks the sum of $1,000, said John A. Gwin the sum of $1,000, and the said James W. Shumate on his individual one-tenth interest in said mine or lode the sum of $1,000, the receipts of all which sums are hereby acknowledged; it is further agreed and understood as follows, to-wit: that the remaining purchase money for said lode is to be paid to said parties of the first part when a sale (now being negotiated) of said lode is made and completed to one O. P. Chisholm and out of money arising from such sale. Further payments from such money arising from such sale to said Chisholm will be due the parties of the first part, as follows: to said John S. Shanks the sum of $8,000, to said John A. Gwin the sum of $8,000, and to the said James W. Shumate the sum of $3,500, for his one-tenth individual interest in said mining lode, and the further

sum of $4,500 for the interest of his children in said mine when a guardian's deed duly executed according to law is delivered to the said parties of the second part; it is further expressly understood and agreed that if no sale is made of said lode to said Chisholm, then the said parties of the second part are not to be held for the further payments above mentioned or any part thereof; it is further understood that said sale to said Chisholm is to be completed, if at all, in sixty days from this date.

"(Signed.)     "JOHN S. SHANKS,
                  "JAMES W. SHUMATE,
                  "JOHN A. GWIN."

It may be stated here that the other original owners of the mine joined with plaintiff in the sale and conveyance of their respective interests.

The agreement of May 17, 1880, referred to by plaintiff in his petition was as follows:

"This is to certify that we, the undersigned, Geo. W. Knox, J. S. Shanks and John A. Gwin, do hereby agree to accept certain payments due us on the Tilden mine as follows, to-wit: May 17, 1880, $2,000 each to the said Knox and Shanks, and $2,500 to the said Gwin; June 5, 1880, $4,000 cash to each of the above mentioned parties, and June 20, 1880, $1,000 cash to each, and five hundred shares of the capital stock of the Tilden Mining Company, of New York, to each of the above mentioned parties with the express understanding, however, that no ore shall be taken from the dump of said mine until the above amounts be paid in full. We hereby agree, however, that work may go on as the party now in charge of this mine may prefer.

"Witness our hands and seals, this the seventeenth day of May, A. D. 1880.

"Witness:     "GEO. W. KNOX,   [SEAL.]
               "J. S. SHANKS,    [SEAL.]
               "JOHN A. GWIN."  [SEAL.]

Gwin v. Waggoner.

"I hereby agree to the above and accept the same on the part of myself and partners.

"S. K. KNOX."

In January preceding this sale, the plaintiff, in conjunction with those interested with him in the ownership of this mine, bonded it, as it is called; that is to say, gave plaintiff the option to purchase four-fifths of the property for the sum of $88,000, if taken by the first of December, 1879, and by a contract entered into contemporaneously with the bond, plaintiff and his co-owners agreed to do certain specified work in the development of the mine, for the expense of which defendants agreed to furnish the money in monthly payments aggregating $5,000, defendants reserving the right to elect whether or not they should furnish an additional amount. It was further "agreed, that after deducting all working and other necessary expense, the balance received from the ore extracted shall be paid to the parties of the second part (defendants) until the sum of $5,000 shall have been so paid, after which the net proceeds arising from the sale of ores shall be equally divided between the contracting parties."

About February, 1880, defendants conveyed the property to O. P. Chisholm by quitclaim deed for an express consideration of $142,000. It was in evidence that Chisholm conveyed the property to the Tilden Mining company, for which it agreed to pay $75,000. Of that amount $10,000 was paid in cash to defendants. Defendant Gates testified that he retained $7,500 of this amount on account of the money paid out in the development of the mine, "and $2,000 we had advanced to the parties at the time the contract was made in December."

The theory upon which plaintiff tried the case was that the sale of December 11, 1879, was an absolute

one with conditional agreement that the deferred payments should be made when a sale, then being negotiated, should be made to said Chisholm, out of moneys arising from such sale, and that this agreement was modified by the contract of May 17, 1880, under which the defendants promised unconditionally to pay the balance as therein specified.

The theory of defendants is, that they were mere agents of plaintiffs and the other owners to consummate a sale of the property, and were not independently bound to pay the purchase price, but that their obligation to plaintiff was only that arising from the agency. The oral evidence tended to prove the respective theories. So far as we are able to discover, the evidence is substantially the same as that given at the former trial. Plaintiff admitted that he received $1,000 when the deed and contract was made in December, 1879, and $2,500 when the agreement of May 17, 1880, was made. It is conceded, for the purposes of this appeal, that the property was sold to New York parties by defendants and Chisholm for $75,000, at which time the $10,000 before referred to was paid. That the New York parties organized the corporation to which Chisholm conveyed the property, and afterwards paid $10,000 additional, out of which plaintiff received the payment of $2,500 May 17, 1880. It is also conceded that no further payments have been made by the purchasers or Chisholm.

Plaintiff on this appeal insists: *first*, that the pleadings and evidence on the last trial was "almost literally the same" as that presented to this court by the record in the former appeal, in which it was adjudged that the evidence was sufficient to require a submission of the issues to the jury and that question was *res adjudicata* and conclusive on the trial court and on this appeal; and, *second*, that independent of the former

adjudication, the evidence on the trial tended to prove
the issues, and the court committed error in refusing to
submit them to the jury.

I.   There can be no doubt of the correctness of the
general proposition that "when a case has been decided
in this court, and again comes here on appeal or by
writ of error, only such questions will be noticed as
were not determined on the previous decision; what-
ever was passed upon will be deemed *res adjudicata* and
no longer open to dispute or further controversy."
*Overall v. Ellis*, 38 Mo. 209. For there would be no
end to a suit if every litigant could, through repeated
appeals, compel a court to listen to criticisms on its
opinions or speculate or chance for changes in its mem-
bers. *Roberts v. Cooper*, 20 How. (U. S.) 467. The
same rule is laid down by Herman on Estoppel and is to
be deduced from many of our own decisions. Herman
on Estoppel, secs. 115, 116, 117; *Hurck v. Erskine*, 50
Mo. 116; *State v. Newkirk*, 49 Mo. 472; *Chouteau v.
Gibson*, 76 Mo. 38; *Chambers' Adm'r v. Smith's Adm'r*,
30 Mo. 156; *Hayden v. Grillo's Adm'r*, 42 Mo. App. 1;
*Stevenson v. Edwards*, 98 Mo. 622.

Counsel for defendants have cited a number of the
decisions of this court in which the rule in its strictness
has been disregarded. *Bell v. Railroad*, 72 Mo. 50; 86
Mo. 599, 612; *Eans' Adm'r v. Eans*, 79 Mo. 53; 97 Mo.
587; *Wernse v. McPike*, 76 Mo. 249; 86 Mo. 565; 100
Mo. 476. And other cases which are cited in their
brief.

Exceptions and qualifications to the rule have also
been expressly declared in *Chambers' Adm'r v. Smith's
Adm'r, supra*, and *Boone v. Shackleford*, 66 Mo. 497.
In the latter case HENRY, J., speaking for the court,
said: "This court has not adhered to that doctrine—
announced in *Roberts v. Cooper, supra*—in its strict-
ness, but has adopted it with a qualification that it

would reconsider its former adjudication where no injustice or hardship would result from reviewing, and if wrong, overruling its former decision.''

Notwithstanding the doubt that must arise from the apparent inconsistencies in these decisions as to the circumstances under which exceptions and qualifications will be made, we think it can be safely said, without going outside any of the cases, that in order that a decision may operate as an estoppel on a subsequent appeal of the same case, the question must have been fairly presented to the court as necessary to a decision in the case and directly considered and decided. Parties should not be concluded upon questions that are decided by mere implication arising from the general disposition of the case or those which were merely collateral to the matter actually considered.

An examination of the opinion of the court on the former appeal will show that the only question carefully considered and directly passed upon by the court was regarding the correctness of the trial court in giving an instruction to the effect that the deed made by plaintiff to defendants was *prima facie* evidence that the transaction was a sale. As to this issue the court said: ''The disposition of the case must, we think, turn upon exceptions taken in this behalf,'' and we find that the consideration of the court was given entirely to that point.

The declaration made in the opinion that ''the liability of said defendants, if any, should have been made to depend upon the evidence in its entirety, the whole case, upon all the facts and circumstances, being for the jury,'' was not, upon a consideration of the whole case, a decision that the evidence would require the submission of the case to the jury. The question as to the sufficiency of the evidence was not raised or in any proper form presented to the court for its decision. The

declaration was merely of a general principle that where there is a conflict in the evidence the jury should decide.

II. The suit was to recover the unpaid purchase price of one fifth interest in the mine conveyed to defendants Waggoner and Gates by plaintiff. The deed and contract of May 17, 1880, constituted the bases of plaintiff's claim. The contract of December 12th was the foundation of the defense.

The court, in deciding that plaintiff had no case upon all the evidence, must have done so upon the deed and written contracts, together with the undisputed fact that the New York purchasers after making two payments of $10,000 each became insolvent and paid no more.

It was held on the former appeal that the deed of December 11th, and the contract of December 12th, should be read and construed together, as constituting one transaction. Reading them together, we think it manifest that the defendants took the title conditioned upon a sale to Chisholm, if completed in sixty days, and were only bound to pay the balance of the purchase price out of money received upon such sale. The contract appears to be a one-sided one, but the parties had the right to make it as it was and we can only construe its meaning as we find its terms written. It is indeed virtually conceded by plaintiff that under the contract of December 12, 1879, defendants were only bound to pay the remaining purchase money out of the money they might thereafter receive through a sale to Chisholm, but they claim that the contract was so modified by the one of May 17, 1880, that the obligation to pay specified amounts at designated times became fixed and absolute.

We are not able to see that this contract modifies the one of December 12th, to the extent claimed for it

by plaintiff. The payments to be accepted by plaintiff and others as therein provided seem to be entirely consistent with the provisions of the contract of December 12th, that the remaining purchase money should be paid cut of the proceeds arising from the sale to Chisholm and not otherwise. If it had been the intention of the parties to have made so radical a modification of the original contract, they would certainly have used language to express that intent. That contract seems to have been made by the vendors with a view of settling among themselves the amounts to be received by each and the dates at which they were willing to accept them and to modify the contract so as to obligate themselves to receive portions thereof in the stock of the New York company.

On the other hand, we are of the opinion that the contract of December 12th, fairly construed, required the defendants to use all the money arising from a resale of the property, in satisfaction of the unpaid purchase price. Nothing can be found in the contracts authorizing defendants to retain any portion of the purchase price to indemnify themselves for money expended in development of the mine or in cash payment in the purchase of the property. Indeed, the contract recites that defendants had paid plaintiff one thousand dollars on the purchase price "and that the remaining purchase money" should be paid out of the proceeds arising from a sale to Chisholm. Defendants seem to have had in view their own protection in making this contract, and if it had been intended that they should use the money arising from a resale of the property in refunding to themselves what they had paid in developing the mine they would certainly have said so.

We think this transaction, fairly construed, required defendants to pay all the money received from a resale of the property, upon the purchase price to be paid this

plaintiff and other vendors, and it became due to plaintiff and others as soon as paid to defendents by Chisholm or his vendees.

There may have been evidence that the contract of December 12th was so modified by oral agreement as to authorize defendants to retain a part of the cash payments in repaying themselves for improvements, but, if so, the evidence was conflicting and should have been decided by the jury upon proper instructions. The option bond and contract made in January, 1879, provided that the advancements for developing the mine should be repaid out of the ore taken therefrom; no other provision for refunding was made.

We hold then in construing the contracts that when the deed was made by defendants to Chisholm, the sale from plaintiff to them became absolute. That the $1,000 cash payment was without condition. That the payment of the balance of the purchase price depended upon Chisholm and his vendees making payments. That when these purchasers made payments to defendant, one fifth of the amounts received by them became at once due to plaintiff and he was entitled to recover tLat amount unless by a subsequent verbal arrangement the contract was modified so as to permit defendants to retain the first payment of $10,000 to reimburse themselves for previous expenditures in developing the mine. Reversed and remanded. All concur; except BARCLAY, J., who is absent.