## RICHARD HOLMES, Respondent, v. ROYAL LOAN ASSOCIATION, Appellant.

### Kansas City Court of Appeals, November 11, 1912.

1. **BUILDING AND LOAN ASSOCIATIONS: Bonus: Premium: Interest.** The bonus or premium for obtaining a loan from a building and loan association, is a certain and definite sum paid for the loan and is distinct from the rate of interest. It cannot consist of a rate per cent payable indefinitely.

2. ———: ———: ———: **Bonus as Per Cent of Loan.** The statute (Sec. 3389, R. S. 1909) providing that a building and loan association may dispense with bids for loans and that such loans may be made to members at such rate of interest and premium as may be provided by by-laws, such premium to be paid in gross installments, does not mean that the premium can be made a per cent of the loan payable monthly during the whole time the money may be unpaid.

3. ———: ———: ———: **Bonus: Per Cent of Principal.** The statute (Sec. 3389, R. S. 1909) in providing that a premium or bonus can be a certain per cent, means a certain per cent of the principal as an ascertained sum, and not a rate per cent during the whole time the loan may remain unpaid. Different provisions of the statute discussed.

4. ———: ———: ———: ———: **Interest: Usury.** A bonus or premium for a loan is not interest, and if, under the name of bonus or premium an additional rate of interest is added, which, together with interest proper, makes a greater per cent than the lawful rate of interest, it will be usury.

5. ———: ———: ———: ———: **Second Appeal.** Where an appellate court remands a case to the trial court with directions to ascertain the amount due on the notes and enter a decree of foreclosure for the same, such order does not mean a decree for plaintiff even though the trial court should find nothing was due.

6. ———: ———: ———: **Res Adjudicata: Second Appeal.** If an appellate court erroneously decides a case, or erroneously states the law, it may in clear cases and to avoid manifest injustice, make a contrary ruling in the same case on a second appeal.

Appeal from Gentry Circuit Court.—*Hon. W. C. Ellison,* Judge.

AFFIRMED.

*J. W. Peery, J. E. Watkins* and *Rusk & Stringfellow* for appellant.

*J. W. Sullinger* for respondent.

ELLISON, J.—Defendant is a building and loan association, from which plaintiff borrowed six hundred dollars on the 21st of December, 1896, and for which he executed his bond and deed of trust on his real property to secure its payment. Contending that the loan had been paid, plaintiff, in February, 1906, brought the present action for an accounting and a cancellation of the deed of trust. Defendant filed a cross-bill denying the bond had been paid in full and alleging that there was still due thereon (including interest) the sum of $255, and prayed a foreclosure of the deed of trust. The deed of trust recites that plaintiff had borrowed $600 on six shares of stock, and provided that it should become void on the payment by plaintiff of said $600, interest and premium, in manner set forth in a certain bond executed by plaintiff. By the terms of this bond plaintiff and his wife acknowledged themselves indebted in the sum of $600

for money borrowed, in consideration whereof they
bound themselves to pay three dollars and sixty cents
each month as dues on stock, three dollars each month
as interest on the loan, and three dollars each month
as "premium on said shares of stock," all and each
of the monthly payments to continue "until the said
principal sum and interest and premium thereon shall
have been paid in full . . . by said shares . . . having
reached their par value."

Plaintiff paid these monthly installments for
ninety-one months, $115.20 a year for seven years and
seven months, aggregating $873.60.

The matter was referred to R. L. McDougal, Esq.,
to hear the evidence and make report of his findings
and the testimony heard by him. Subsequently and
in due form, he made his report, in which the sum
found to be due on the mortgage was $269.06. In ar-
riving at that result he found the loan to be usurious
and gave plaintiff credit for the interest paid, but he
refused credit for monthly payments on stock dues of
three dollars and sixty cents for seven years and
seven months. In other words, he refused to allow
credit for the withdrawal value of the stock.

The trial court agreed with the referee that the
loan was usurious and that plaintiff should be credited
on the principal debt with usurious payments as pro-
vided by the statute (Sec. 7183, R. S. 1909). [McDon-
nell v. DeSoto Loan Ass'n, 175 Mo. 250, 272; Arbuth-
not v. Ass'n, 98 Mo. App. 382.] But the trial court
found error in the referee refusing to credit plaintiff
with his payments on stock. The defendant agrees
the trial court was right and the referee wrong, as to
crediting the payments on stock, but insists the referee
and the court both erred in finding the loan to be usuri-
ous; and that is the question which is presented for
our decision. Its determination turns on the question
whether the monthly three per cent charge during the

whole time the loan was unpaid, was a legal charge
for a premium.

The statute, sections 1363, 1364, R. S. 1899, which
are sections 3390 and 3391 of the revision of 1909, pro-
vides that premiums for loans shall consist of a per-
centage on the amount loaned, in addition to interest;
and that such premium shall not be considered usury
unless it should be "unreasonable and extortionate."

So therefore, if in making the loan to plaintiff,
defendant has provided for such a bonus or premium
in addition to interest as is allowed by the statute,
it does not render the loan usurious. On the other
hand if, in providing for what defendant calls a bo-
nus, provision has really been made for a rate of inter-
est in excess of that allowed by law, it is usurious; for
the law is, that for defendant to enjoy the extraordi-
nary privilege of immunity from the usury laws which
apply to the community in general, it must, with sub-
stantial precision, track the course set forth in the
statute as a requisite to such immunity. Such has
been the rulings in this state and so it was held under
a like statute in Illinois. [Free Home Bldg. & L.
Assn. v. Edwards, 223 Ill. 126.] In that case the
court stated that: "Usury is prohibited by our stat-
ute, and while homestead and loan associations are
authorized to charge more than the rate of interest
allowed by our interest laws, they can only do so by
a compliance with the act under which they are incor-
porated. . . . It is just as illegal and contrary to pub-
lic policy for associations like appellant to charge
more for a loan than is allowed by our interest laws,
without a compliance with the provisions of the stat-
ute authorizing them to do so, as it would be to charge
a usurious rate in the absence of a statute."

The sections of the statute (Sec. 1362, R. S. 1899,
Sec. 3389, R. S. 1909) directing how loans shall be
made, provides: First, that loans may be offered to
stockholders who shall bid the highest premium; and

this premium "may be deducted in gross from the loan, or it may be charged and be required to be paid in installments." Second, if the stock is issued in series or at different times, so as not to mature at the same time, then the borrower only pays such proportion of the full premium as the number of months his stock lacks of being 120 months old, bears to 120 months. Third, the association may however provide in its by-laws that instead of a premium the bid for a loan may be a stated rate of annual interest upon the sum desired, payable in periodical installments; such bids shall be the interest to be paid during the whole period of the loan. Fourth, if a by-law of the association so directs, bids may be dispensed with and loans may be made to members at such rate of interest and premium as may be provided in the by-laws, "such premium to be paid in gross installments."

It will be observed that all the foregoing provisions except the last one, concern loans which are auctioned off to the highest bidder. In supposed compliance with the last one, the association passed the following by-law dispensing with bids, under which the loan in controversy was made: "Bidding for loans shall be dispensed with and, in lieu thereof, interest at the rate of six per cent per annum shall be charged, payable in monthly installments of fifty cents per month on each $100 borrowed, and a premium of fifty cents per month on each $100 borrowed shall be charged, payable monthly." A construction of the statute clause, in connection with this by-law, will determine the case. It will be observed that that clause does not dispense with a premium and authorize a loan at any rate of interest which may be bid, as may be done under the third clause. If the money is loaned under that clause, without a bid, and a bonus is charged, it is a charge in addition to interest. It is apparent throughout the statute that interest and a bonus or premium are two different things. The very

act of providing, as in the third clause, that a premium may be dispensed with and interest alone substituted, emphasizes the distinction between them. And more than this, the third clause provides that when premiums are dispensed with and interest is substituted, it must be a stated rate of annual interest payable in installments *"during the whole period of the loan."* But the fourth clause, in permitting premiums "to be .paid in gross installments," does not say that such installments may be required during the whole period of the loan. The plain inference is the contrary, that is to say, that the premium is a certain sum, a certain per cent of the principal, divided into installment payments. Installment means a part of a greater amount, and it is a word only fitly used in connection with an ascertained amount; especially is this true when it is qualified by the word "gross;" and when the statute says such premium shall be paid in gross installments, it is. no more nor less than saying that the premium shall be in gross, payable in installments.

It is suggested that section 1363, R. S. 1899, section 3390, R. S. 1909, says that premiums shall consist of a percentage on the amount loaned; but that does not mean a rate per cent for the uncertain period the money may be kept. It means a certain per cent or part of the sum borrowed is bid by the borrower, and that it is either retained by the association out of the sum loaned, or the amount which that per cent would make is divided into installment payments and incorporated in the note; and that is what is expressly contemplated by the first clause of section 1362, R. S. 1899, section 3389, R. S. 1909, which reads that "said premium bid may be deducted in gross from the amount of the loan, or may be charged, and be required to be paid in proportionate amounts or installments, at such time during the existence of the shares of stock loaned or advanced upon as may be provided in

the by-laws of the association." And so under the last clause of that section (under which this loan was made), when the loan is not by bid, the premium is a certain per cent of the sum loaned, the amount of which is ascertained and divided into gross installments and thus paid.

It being thus clear that interest and premium are two different things, we ask what the difference is? It is this: Interest is a certain rate per cent of the sum loaned for the time the money is detained by the borrower; while a bonus or premium is a definite sum agreed upon which is paid in addition to interest, either in advance, or by installments (authorities hereinafter cited). And such is, undoubtedly, the meaning of our statute.

Now in the bond in question, what is called a premium is merely a rate per cent of interest for the *whole time the money is unpaid*. The law will not allow the mere act of calling interest a bonus, to make it so, for they are not the same thing. To merely change the name of an article leaves the article itself unchanged. In this bond either two premiums are demanded, or double interest is exacted; for the interest and what is called the premium are but duplicates, each of the other. They are the same rate per cent and run for the same uncertain period. If the Legislature intended that interest could be called premium, why the necessity of the repeated use of the latter word?

We find the same view taken of similar loans in other jurisdictions. In Connecticut a building and loan statute permitted the loan of money at interest, and, as in ours, a bonus in addition for the privilege of the loan. Stock was subscribed and a loan was made and a note taken promising to pay the principal and interest "and a bonus of three-fourths of one per cent per month, in addition to the interest, both interest and bonus payable monthly in advance."

This was held to be usury, the court saying: "For although one portion of the sum to be paid for the use of the money is called interest, and another portion a bonus, yet in truth, and in fact, it was nothing more nor less than a contract to pay fifteen per cent for such use. [Mutual, etc. Building Ass'n v. Wilcox, 24 Conn. 147.] The court further stated that while the Legislature authorized a bonus in addition to interest, yet by use of the word bonus "they meant something definite; something distinct, and independent of the interest, in the ordinary acceptation of the term; a definite sum for a loan for a specified time, and not anything which the parties, in their contract, might choose to denominate a bonus."

In Washington Nat. Bldg. Loan & Invest, Ass'n v. Stanley, 38 Ore. 319, there was a loan of $500, for which a note was given promising to pay the principal "with six per cent interest per annum, and six per cent premium per annum, thereon, from date until paid," and it was held to be usury on the ground that while the statute of Oregon authorized a building and loan association to charge a bonus in addition to interest, it did not permit usurious interest to be charged under the name of a bonus. And that a bonus was a definite sum agreed upon, while the promise of a bonus in that case was for an indefinite sum in the way of rate per cent for the uncertain time the money might not be paid. The court said that there was no authority for "fixing of a premium by a rate per cent or by a percentage upon the amount of the loan, and dependent for the time of its continued payment upon the length of time the loan may remain unpaid, or the stock of the borrower be not fully paid in. There is nothing in such a condition to distinguish it from interest, and the Legislature surely did not intend to say that interest shall not be treated as interest, or that interest, to be collected by the designation of premium, shall not be treated as inter-

est. So that, when the statute speaks of the rate of premium, it does not mean the same thing as the rate of interest. The more natural and consistent interpretation would be that, when the Legislature speaks. of a rate of premium, it means a proportional or pro. rata distribution of the payment of a premium, fixed by the by-laws or by resolution of the board of directors of the association. If it does not have this meaning, it has no other than will distinguish it from interest, and the act cannot be held to sanction the taking of any premium at all under the appellation of 'rate of premium.' The idea of a rate premium corresponding to rate of interest is not within the spirit and intendment of the law of building associations,. . . . ."

In Gray v. Baltimore Building & L. Ass'n, 48 West Va. 164, it was in terms decided that while a building and loan association may fix a premium payable in installments, such premium must be a definite and certain sum, "and not a percentage payable indefinitely at fixed periods;" and that such percentage payable indefinitely at fixed periods, though called a premium in the obligation, is interest under another name. The court said: "The present question is,. has the association the right to fix a minimum premium at a certain percentage on the amount borrowed, payable indefinitely at fixed periods? In other words, under the name of 'premium,' to increase the rate of interest? If such is the case, the association could not be guilty of taking usury, it matters not how high its rate of interest might be fixed, so the word 'premium' is substituted for the word 'interest.' To demand 12 per centum interest would be usury, but to . demand 6 per cent interest and 6 per cent premium would not be usury. Such an evasion is too transparent to escape condemnation, and cannot for a moment be upheld. And if there is any language in the Archer case that leads to such a conclusion it is dis-

approved. A minimum premium may be fixed under the law, but it must be a lump sum, certain and definite, which may be paid in advance or in periodical installments. Under the pretense of fixing such premium, the legal rate of interest may not be increased indefinitely.''

The same thing was again decided in McConnell v. Cox, 50 West Va. 469.

It seems to us that if we keep in mind the distinction the Legislature has made in using the two words, it becomes manifest that the contract evidenced by the bond and mortgage in controversy must be considered as not within the statute, and therefore usurious. Repeating what we have already written, the statute permits a loan to be made without bids at a rate of interest, and a premium which may be paid in gross installments. The interest, as contemplated by the statute, is a continuing charge for the use of the money so long as the borrower uses it; while the premium is a sum promised for the privilege of obtaining the loan, and the word, used as it is in connection with interest, necessarily means a certain sum. How, in reason, could a borrower be supposed to promise to pay for the privilege of a loan which is to draw interest, a sum he could not know the amount of? Payment for the privilege of *obtaining* a loan is something entirely different from payment for the *continuation* of a loan. And if we should conceive that one, to obtain the privilege of a loan, would agree to pay a premium, *indefinitely* continued, in addition to the regular rate of interest, it would be come necessary, under Sec. 1364, R. S. 1899, that we consider it to be unreasonable and in its spirit usurious and oppressive, and not allow to it exemption from our usury statute.

The statute (Sec. 1364, R. S. 1899; Sec. 3391, R. S. 1909) providing that no interest not extortionate or unreasonable, etc., shall be considered usury, may

cause the suggestion to be made that we should not designate the premium charged here as interest and; therefore usury. It is probable that the statute referred only to such interest as it authorizes and designates. by that name. But the suggestion can be of no practical importance in this case. For, if we call the charge a. premium, as it is designated in the bond, the same result follows; since it is not a charge recognized by the law as a premium, and should therefore be credited as a payment on the bond, thus having the same practical effect as if it were called usurious interest.

But it is insisted that the case was determined in defendant's favor when here on the first appeal and that all matters connected with the case which plaintiff presented to the trial court after the cause was remanded, are *res adjudicata*. There is no merit in this. On the former appeal before entering upon the chief and substantially, the only matter for decision, we held that plaintiff was not under duress when he signed the bond and deed of trust. We then said that: "The question in the case is this: Was the defendant association at the time it made the loan doing business. under the Amendatory Act of June 21, 1895, or under the act that previously existed? If under the latter for want of competitive bidding as the statute there required the loan was an ordinary one and the monthly payments in excess of six per cent per annum were usurious and the plaintiff is entitled to relief as the payments he has made has discharged the debt with the legal rate of interest." [Holmes v. Loan Assn.,. 128 Mo. App. 329, 334.]

And defendant stated that that was the only question, as is shown by the following excerpt from its brief on the first appeal: "This loan was made without competitive bidding. Plaintiff claims that defendant association never became authorized to act under the laws of 1895, and that therefore, it had no right when this loan was made to dispense with competitive

bidding and make a loan for a stated amount of premium and interest. *This is the question to be decided by this court and, as we believe, the only question.*" (Italics ours.)

We stated that if the defendant was doing business under that amendment, competitive bidding was not required and that premium and interest in excess of the legal rate would not be usurious. We then, at length, gave our reasons for holding that the defendant was acting under the law as amended; and on the matter of notice for meeting of stockholders to adopt a by-law under the amended statute, we differed from the Supreme Court of Kansas in a case of this defendant against Forter, 68 Kan. 468. Then, assuming that as defendant could make loans without competitive bidding, the loan to plaintiff was otherwise legally made, we remanded the cause with directions to the trial court "to ascertain the amount still due defendant on said notes and to decree a foreclosure of the deed of trust to satisfy the same." But it was not a part of this court's meaning or intention that the trial court should ascertain some amount to be due defendant if in point of fact nothing was due. It is too clear for cavil that this court did not intend that plaintiff, in order to save his property from sale, should be compelled to make further payments, if those already made had discharged the bond.

But, should we concede that the court did intend to say that some amount was due defendant at all hazards, and that the trial court should proceed to fix or ascertain that sum, it will not avail defendant as *res adjudicata*. For even on the same question, in the same case, the rule that the decision on a former appeal prevents a consideration of that question on a later appeal, is not unalterable and without exception and is not applied where "gross or manifest injustice has been done." This is stated in Hamilton v. Marks,

63 Mo. 167, and has been repeated time and again from then till now. [Gwin v. Waggoner, 116 Mo. 143, 151; Bird v. Sellers, 122 Mo. 23, 32; Bealey v. Smith, 158 Mo. 515, 523; United Shoe Mach. Co. v. Ramlose, 231 Mo. 508; Mangold v. Bacon, 237 Mo. 496; also the recent case of Bagnell Timber Co. v. Ry. Co., 145 S. W. 469.] Especially will it not be applied where the question in the last appeal was not decided in the first. In the case of Gwin v. Waggoner, supra, it is said that: "Notwithstanding the doubt that must arise from the apparent inconsistencies in these decisions as to the circumstances under which exceptions and qualifications will be made, we think it can be safely said without going outside any of the cases, that in order that a decision may operate as an estoppel on a subsequent appeal of the same case, the question must have been fairly presented to the court as necessary to a decision in the case and directly considered and decided. Parties should not be concluded upon questions that are decided by mere implication arising from the general disposition of the case or those which were merely collateral to the matter actually considered.

An examination of the opinion of the court on the former appeal will show that the only question carefully considered and directly passed upon by the court was regarding the correctness of the trial court in giving an instruction to the effect that the deed made by plaintiff to defendants was prima facie evidence that the transaction was a sale. As to this issue the court said:   'The disposition of the case must, we think, turn upon exceptions taken in this behalf,' and we find that the consideration of the court was given entirely to that point."

The result of our conclusion on this point may be thus stated: We decided on the first appeal that the defendant had properly brought itself under the Amendatory Act of 1895, but we did not consider or decide

that this loan had been made within the terms of that law.

The judgment is affirmed. *Broaddus, P. J.,* concurs. *Johnson, J.,* not sitting.