[Civ. No. 8344. First Appellate District, Division Two.—March 3, 1932]

FRANKLIN R. KENNEY, Respondent, v. LOS FELIZ INVESTMENT CO., LTD. (a Corporation), Appellant.

Chapman & Chapman for Appellant.

Newlin & Ashburn, Paul Sandmeyer, A. W. Ashburn and Paul Sandmeyer for Respondent.

NOURSE, P. J.—This is a proceeding for declaratory relief. Plaintiff had judgment and the defendant Los Feliz Investment Co., Ltd., appeals upon a typewritten transcript.

The controversy arises out of a transaction for the sale of oil properties located in the Santa Fe Springs district. On March 1, 1929, the Los Feliz Investment Company, Ltd., sold the property to C. G. Willis for the full sum of $1,000,000, $125,000 of which was paid at the time and a note, or contract, for the payment of the balance was executed, together with a· deed of trust wherein the Bank of America of California was named as trustee. At the time of this transaction the property was covered by an oil and gas lease to the Wilshire Oil Company whereby the lessor was to receive thirteen and two-thirds per cent of all oil and gas produced from the premises. The pertinent portions of what is termed a promissory note are as follows: "$875,000.00 Los Angeles, California March 1st 1929. *In installments as herein stated,* for value received, I promise to pay to Los Feliz Investment Co., a corporation, or order, at Los Angeles, California, the principal sum of Eight Hundred Seventy Five Thousand ($875,000.00) Dollars, with interest from date hereof on unpaid principal at the rate of seven (7) per cent per annum payable monthly principal

payable *in installments* of Five Thousand Dollars ($5,000.) *or more* on the 1st day of each and every calendar month beginning on the 1st day of May, 1929. Anything herein to the contrary notwithstanding, it is understood that the Maker of this Note shall not be personally liable for the payment of any part of the principal or interest thereof, but such principal and interest shall be payable solely and only out of the proceeds that may be derived from 50% of 13–⅔% of the oil and gas that may be produced, saved and sold from the property covered by the trust deed executed to secure this note, together with any proceeds that may be derived from the sale of said property in the event of foreclosure under said trust deed, all as therein provided. Nevertheless, it is understood and agreed that if said *minimum payment* of Five Thousand Dollars ($5,000.) per month and interest is not made as and when *each installment* becomes due, even though 50% of the 13–⅔% of the proceeds of oil do not equal that amount, then this note shall be deemed in default, and the holder thereof shall have all rights of foreclosure set forth in the trust deed executed as security for this note.'' The pertinent portions of the deed of trust read, ''It Is Understood that 50% of 13–⅔% of all oil and gas that may be produced, saved and sold from the above described premises *shall be applied* on the hereinafter described note, if, *as and when produced,* such payments to be applied *when received,* first to interest and then to principal, on the *next minimum payments due* under said installment note; the balance of the proceeds derived from 13–⅔% of the oil and gas produced and saved from the demised premises shall belong to and be delivered to C. G. Willis or assigns, if, as and when produced, saved and sold.'' (Italics in both note and deed is ours.) Concurrently with the execution of these papers, Willis, by a separate written document, personally guaranteed the payment of the difference between the sum constituting the total amount paid upon the note plus the amount received from a sale under foreclosure and the sum of $475,000 with interest from March 1, 1929. On April 2, 1929, Willis sold the property to the plaintiff subject to this deed of trust and at the same time assigned all his rights to oil in the premises and plaintiff was substituted as the party in escrow in place of Willis. All moneys obtained

through the royalty were delivered to the trustee, which applied fifty per cent thereof to the interest and installments due upon the promissory note and delivered fifty per cent to the plaintiff less such sums as were necessary to meet shortages in the monthly payments under the terms of the note. ■ A controversy arose between the parties as to the proper application of these funds, the theory of the plaintiff being that under the terms and conditions of the promissory note the minimum payments due on the first of each month were the monthly interest and the $5,000 installment of principal, and that so much of said fifty per cent of the royalty should be applied when received on the next unpaid minimum payment falling due as is necessary and sufficient for that purpose and that the balance thereof should be applied on subsequent monthly minimum payments. On the other hand, the Los Feliz Investment Company contended that under the terms and conditions of the promissory note and deed of trust all proceeds realized from said fifty per cent of the royalty should be credited only on the minimum payment due on the first day of the next succeeding month plus interest then due, and that if there be in any one month any excess over the minimum amount of principal and interest due for the next payment such excess should be credited upon the principal sum due. Thus under plaintiff's theory all excesses in any month's proceeds should be credited to the minimum payments due on both principal and interest in the succeeding months over such number of months as may be covered by such excess, whereas under the theory of the Investment Company such excess, after payment of the interest and installment due on the first day of the following month, should be immediately applied to a reduction of the principal, and the plaintiff should then be required to continue the monthly installments of $5,000 and interest in order to prevent a default under the contract. The importance of the controversy is indicated by these facts: From August 1, 1929, to February 1, 1931, the trustee received in excess of the minimum payments on principal and interest due during that period the sum of $264,756.54. Under plaintiff's theory this sum, together with what was obtained during the course of the trial, would cover all payments of interest to become due up to and including January 1, 1934,

and all payments of principal due up to and including December 1, 1933, with a balance of $2,835.85 to be applied to the principal installment due on January 1, 1934. Under the theory of the Investment Company this full sum, after payment of principal and interest due March 1, 1931, would be applied to a reduction of the principal and the plaintiff would, therefore, be required to continue the payment of the monthly installments together with interest until the entire principal was paid. The trial court adopted the theory of the plaintiff and found that the only monthly payments *required* to be made upon the promissory note were the sum of $5,000 on account of principal plus interest for one month upon the unpaid balance of the principal. That this installment of principal plus one month's interest "is the aggregate defined in the said note and deed of trust as constituting the minimum payment to be made monthly thereon"; that the installments mentioned in the said note and the said deed of trust and the minimum payments mentioned in said instruments are the equivalents of each other "and that there is no obligation under the said note or deed of trust to pay for any month any sum, out of the proceeds of sale of oil and gas or otherwise, in excess of said 'minimum payment' as above defined"; that the Investment Company is obligated immediately upon the receipt of said sums of money to apply the same in liquidation and payment of the next succeeding installment or installments due or to become due under the said promissory note and thereby pay the next succeeding minimum payment or payments which have not been theretofore paid and which will become due and payable. It was then found that, as a result of this method of application of the proceeds under said deed of trust, all interest on said promissory note due or to become due, including January 1, 1934, was fully paid and all installments upon the principal were paid to and including December 1, 1933. Under a separate issue raised in the pleadings as to the time of payment of the proceedings to the trustee the trial court found that the proceeds thereof when received by the plaintiff, but not before receipt thereof, should be paid to the trustee to be by it paid over to the persons entitled to it under the terms of the deed of trust. A further finding was made that the instruments involved in the controversy were not ambiguous or suscepti-

ble of interpretation by means of practical construction. Pending the trial of the action plaintiff continued to pay, but under protest, monthly installments of $5,000, together with interest, amounting to the sum of $26,702.86, for which sum the trial court gave plaintiff judgment.

On this appeal it is urged by the appellant that the trial court erred in its interpretation of the documents; that it erred in finding there was no ambiguity in the documents and in rejecting evidence offered to show the intentions of the parties, and that it erred in giving the judgment for the sum paid under protest upon the ground that said payments were not made under duress. The position of the appellant upon the first point is that the promissory note called for the payment of principal in installments of five thousand ($5,000) dollars *or more* on the first day of each calendar month; that the terms of the deed of trust which were made a part of the same transaction called for the application of the full fifty per cent of the proceeds of the royalty to these monthly payments, but that neither the promissory note nor the deed of trust called for the payment of *more* on account of interest than is due on the next succeeding month. It is then argued that this excess payment of principal is compulsory so far as permitted by the proceeds from the royalty and is not optional with the maker of the note. The appellant emphasizes that the note does not permit payments ''on or before'' the first day of the month and in this respect argues that the case differs from *Los Angeles Investment Co.* v. *Wilson,* 181 Cal. 616 [185 Pac. 853], and similar cases cited by appellant which *permit* the maker of the note or the purchaser under a contract of sale to reduce the principal at a greater rate than the monthly installment named in the contract. Thus it is said in the Wilson case (p. 619) : ''The agreement did not require the payment of any sum greater than $36 a month for one hundred and twenty months. Payment of a greater sum was optional with Mrs. Wilson. If she chose to pay more than $36 at any one time (as she did) such payment must be considered as having been made 'on or before' any date on which she failed to make payment of $36.'' The respondent does not concede a difference in these relations, but argues for the finding made by the trial court that the words ''payment'', ''minimum payment'' and ''instalments''

used in the promissory note and the deed of trust are interchangeable and the equivalents of each other. But respondent does not explain the use of the words "or more" in connection with the payment of principal, and these words were apparently overlooked by the trial court as well. The reasonable construction of this portion of the note would seem to be that, inasmuch as the application of the fifty per cent of the royalty was compulsory, the trustee was directed to apply such excess to such principal and interest as was then unpaid or due on the first day of the following month and that any excess over such amount should be applied on the payment of principal alone. This would seem to follow from the terms of the deed of trust which read: "Such payments to be applied when received, *first* to interest and then to principal, on the next minimum payment *due* under said instalment note." Under the express terms of the note interest is made payable monthly on the first day of each month upon the balance of principal then remaining unpaid and when interest is paid for one month no interest is *due* until the first day of the following month, whereas under the terms of the note so much of the principal in excess of $5,000 is due and payable on the first of each month as represents the excess in the royalty proceeds. As illustrating the unreasonableness of respondent's theory interest might be paid (as was ordered in the judgment) for a period far in advance of its due date though the royalty proceeds at some future date might be so great as to retire the principal prior to the period for which interest is paid. The excess proceeds from the royalty were shown to have been something over $264,000 in a period of less than two years, and it is reasonable to assume that successful production from the wells may bring in a like amount at some time in the future. Thus the entire principal on the note may be paid prior to the time for which payments of interest are credited under the terms of the judgment, and these interest payments having been paid at the request of the respondent they would become voluntary payments which, not having been due when paid, he would be unable to recover.

But we are not in accord with the trial court's interpretation of the use of the word "installment" as applying to the payment of both interest and principal. The word "in-

stallment" is one of common use and has a well-accepted meaning. Century Dictionary defines installment as "Partial payments on account of a debt due." Standard Dictionary gives this definition: "A partial payment of a price or debt due." Bouvier's Law Dictionary gives this definition: "A part of a debt due by contract and agreed to be paid at a time different from that fixed for the payment of the other part." The word "interest" has a well-accepted meaning as a premium paid for the use of money usually recognized as a percentage. (*Hagan* v. *Commissioners' Court*, 160 Ala. 544 [37 L. R. A. (N. S.) 1027, 49 South. 417].) This difference between an installment and interest is recognized in *Holmes* v. *Royal Loan Assn.*, 166 Mo. App. 719 [150 S. W. 1111, 1113], where it is said that an installment means a part of a greater amount and is a word only fitly used in connection with an ascertained amount, whereas interest is a certain rate of percentage of the sum loaned for the time the money is detained. We find no uncertainty in the use of these words in the note and deed of trust. The principal in the note is expressly made payable "in installments as herein stated". The interest is made payable monthly on the *unpaid balance* of principal at the rate of 7 per cent per annum. However, immediately following the provision relating to payment of interest the note recites "principal payable in installments of Five Thousand ($5,000) Dollars or more". This distinction is carried into the terms of the deed of trust, where it is provided that fifty per cent of the proceeds from the royalty shall be applied, first, to interest and then to principal "on the next minimum payments due under said installment note". In the escrow instructions executed by respondent's assignor and the appellant concurrently with the execution of the note and deed of trust the trustee was informed that it would "on or about the twenty-fifth day of each month receive said payments representing royalty payments on account of a certain oil and gas lease to be applied as received in accordance with the terms of the deed of trust". In explanation of these instructions it is in evidence that the parties contemplated the return from the proceeds of the royalty on or about the twenty-fifth day of each month and they desired the trustee to use the moneys received from

that source in the payment of the interest and principal due on the first day of the following month. Thus when they used the expression in the deed of trust ''on the next minimum payments due under said installment note'' they contemplated the two minimum payments which would then become due, to wit: the minimum payment of $5,000 on the principal and the minimum payment of the interest which was then reckoned to be due upon the unpaid balance. We do not find in the use of the word ''payments'' in the plural anything which *compels* the construction that the parties contemplated the payment of interest and principal before the due date, but are inclined to the view that the parties were concerned with an express declaration that the proceeds from the royalty should be applied to the interest and installment due on the first of the following month so that if this amount equalled what was then due no further demands should be made upon the maker of the note for payment of either principal or interest for that particular month. In other words, if the proceeds from the royalty were sufficient to meet the monthly ''payments'' as they became due on the first day of the month following their receipt then no further demand was to be made upon the maker of the note for either principal or interest for that month. However, we do not decide whether the excess over the next monthly minimum payments due should be applied as a flat reduction of the principal then due or applied over a series of future monthly payments of principal because that is a question that the trial court must decide with the proper evidence before it, but we do hold that such excess should be applied to principal and not to interest which is not due.

■ This brings us to the second point raised by appellant—that the trial court erred in rejecting evidence of the negotiations and conduct of the parties which was offered by appellant for the purpose of disclosing the true intent of the parties in this connection. It is a settled rule that when the language employed is fairly susceptible of either one of two constructions contended for without doing violence to its usual and ordinary import an ambiguity arises where extrinsic evidence may be resorted to for the purpose of explaining the intention of the parties, and that for this

purpose conversations between and declarations of the parties during the negotiations at and before the execution of the contract may be shown (*Balfour* v. *Fresno C. & I. Co.*, 109 Cal. 221 [41 Pac. 876]). And this course is expressly authorized by the terms of section 1861 of the Code of Civil Procedure. We are not in accord with the holding that the deed of trust and the note are not fairly susceptible of either one of the interpretations here contended for, and for that reason the trial court erred in rejecting this evidence. ■ The respondent defends the ruling on the ground that he is a holder in due course and without notice, but in this connection it should be borne in mind that the paper referred to as the note is not a negotiable instrument as it does not contain an unconditional promise to pay, but is payable upon a contingency and only out of a particular fund. (Secs. 3082, 3085, Civ. Code.)

Appellant attacks the portion of the judgment which awarded respondent the sums paid by him upon interest and monthly installments during the course of the trial. In this connection the trial court found that these moneys were paid under duress. The appellant now argues that if respondent's theory is correct they were voluntary payments and for that reason not recoverable. The question cannot be decided with accuracy because the judgment does not segregate the amounts paid upon interest from those paid upon principal. If appellant's construction of the contract is correct the amounts paid upon principal were due and not recoverable by respondent. If the trial court should determine upon a retrial of the case that the proper construction of the contract is that the excess receipts from the royalty over the payment of principal and interest due upon the first of the following month should be applied wholly to payment of principal installments for a period of months in the future then the respondent would be required to pay the interest due upon unpaid principal on the first day of each month, notwithstanding the payment of a principal installment for that period. It is not possible, therefore, for us to determine upon this record whether the moneys included in the judgment were justly due at the time they were paid or not, and that question must be left for determination by

the trial court after a proper construction has been placed upon the contract.

Judgment is reversed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 2, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 2, 1932.