[Civ. No. 10311.   Third Dist.   Apr. 20, 1962.]

JEAN ANDERSON et al., Plaintiffs and Appellants, v. TAHOE KEYS, INC., Defendant and Respondent.

Hughes, Maul & Fogerty and Donald M. Dezzani for Plaintiffs and Appellants.

Orr, Heuring & Wendel, Donn L. Black and McDonald, Brunsell & Walters for Defendant and Respondent.

PIERCE, J.—A purchase price promissory note given by defendant corporation to plaintiffs-appellants, the sellers, and

the deed of trust on the property sold securing same contained a prepayment of principal and partial release clause. It was an installment note with installments payable annually.

This controversy, an action by the sellers for declaratory relief, concerns the interpretation of a provision in said note: "Any prepayments of principal shall be credited to the next annual installment coming due." The question is whether this means that in any single prepayment of principal right to credit is limited to the installment next succeeding *the day of prepayment* with the excess to be applied to reduce the last installment of principal on the note, or whether the obligor is entitled to have a prepayment of principal credited first against the current installment with excesses applied successively against installments following in chronological order.

The trial court found the language of the note was susceptible of either of the two interpretations and took evidence, over plaintiff's objections under the parol evidence rule, of the circumstances under which the note was made, to determine the sense in which the sentences quoted above was intended by the parties. It concluded, in accordance with this evidence, that defendant's contention it was entitled to have succeeding installments credited until prepayments were exhausted was correct and gave judgment to defendant. We find no error in the ruling.

The evidence of said circumstances may be summarized as follows: The land was bought for subdivision purposes. The purchase price was $201,476. After the down payment a balance of $171,254.60 remained for which the note and trust deed mentioned above, dated December 6, 1956, were given. The note was an installment note with annual principal installments of $8,562.73 each, payable, together with 4 per cent interest, on December 6th of each year, commencing December 6, 1957. Maker had the option of making additional prepayments of principal in multiples of $1,000 (after January 2, 1957). The trust deed securing the note provided for partial reconveyances of ten or more acres of the real property covered thereby upon payment of $1,330 of the principal for each acre so conveyed.

The extrinsic evidence (admitted over the objection of plaintiff as stated above) relates to a transaction in the office of the title company when the note and trust deed were delivered in escrow. The note, although dated December 6, 1956, was not delivered until after December 28, 1956. On the latter date Arch MacDonald, president of Tahoe Keys,

Inc., Clay Orr, its secretary, and two of plaintiffs, Barton Dunlap and Melvin Beverly, called on Harry Chadwick, the manager of the title company and, according to MacDonald, he had a discussion with Orr, Dunlap and Beverly in which MacDonald said: "Do you people have any objections if payments are paid in advance, that they will be credited on the next *installments*?" Mr. Beverly then turned to Mr. Dunlap and asked him if he had any objections and he said, "No."

Thereafter the transaction was closed and during the next three years, and in several installments, the last of which was June 30, 1959, defendant made principal payments totaling $46,692.31 or $21,004.12 more than sufficient to meet the three annual principal installments theretofore due, also the installments due December 6, 1960, December 6, 1961, and a part of the installment due December 6, 1962—if the interpretation contended for by defendant and approved by the trial court is correct.

The arguments of appellants that the conclusion of the trial court was incorrect all arrive at one destination: That the language of the instrument is plain, clear and unambiguous and appellants cite the rule that if the language of a contract is thus plain, etc., parol evidence cannot be resorted to, disturbing this plain meaning. This rule, referred to by Dean Wigmore as the "traditional" rule (Wigmore on Evidence (3d ed.), §§ 2461-2463) and as the "conventional" rule by Professor McBaine (31 Cal.L.Rev. 145), has been criticized by both, and by others. Professor Wigmore states: "The fallacy consists in assuming that there is or ever can be *some one real* or absolute meaning. In truth, there can be only *some person's* meaning; and that person, whose meaning the law is seeking, is the writer of the document." (Wigmore on Evidence (3d ed.), § 2462, pp. 191-192.)

It has been stated by Professor Macauley (13 Stan. L. Rev. 820): "One who seeks to find the actual agreement of the parties cannot have too much faith in a dictionary unless the bargain is between its coeditors."

In *Trubowitch* v. *Riverbank Canning Co.*, 30 Cal.2d 335 [182 P.2d 182], it was held, under the surrounding circumstances of use of a form contract, that a phrase contained therein, "This contract is not assignable" did not prevent assignment to stockholders of a dissolved corporation who thereafter operated as partners. The court says that that was not the sort of assignment contemplated in the contract "as properly construed."

This holding is consistent with California code provisions. Code of Civil Procedure section 1856, after providing that between the parties to a written agreement there can be no evidence of the terms of the agreement (with specified exceptions) other than the contents of the writing, adds: "But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in Section 1860 . . . ."

Said section 1860 of the Code of Civil Procedure provides: "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

Of these declarations it had been said in the article above (McBaine, 31 Cal. L. Rev. 145, 163): "These sections of the Code of Civil Procedure of California make perfectly clear that no distinction exists between writings which are plain on the face and those which are ambiguous. . . ."

The Supreme Court in *Laux* v. *Freed,* 53 Cal.2d 512, 523 [2 Cal.Rptr. 265, 348 P.2d 873], states the conventional or traditional rule against disturbing plain meaning but does so after the court has first discussed thoroughly the extrinsic evidence in the record under which the right of way deed there involved was issued to show how it *established* "plain" meaning. (See concurring opinion of Justice Traynor, p. 525, at p. 526; see, also, *Universal Sales Corp.* v. *California Press Mfg. Co.,* 20 Cal.2d 751 [128 P.2d 665].)

In the instant case we escape the dilemma of whether our obligation is to follow *the rule asserted* or *the rule applied* because, it seems to us, contrary to appellants' contention, that the meaning of the language employed in this note is not plain, certain and unambiguous, but is susceptible of two reasonable interpretations, that postulated by respondent being the more reasonable of the two.

We hold that the sentence: "Any prepayments of principal shall be credited to the next annual installment coming due" can sensibly mean, as appellants contend, that credit against an installment shall be limited to that installment next following the date of payment of said prepaid sum (with the consequence that all excesses become a credit against the last installments). *Or* it can mean that the "next installment" referred to is that next following the time of actual *application* of prepayment, from which it would follow that

after any given prepayment has been credited against a current installment to extinguish it, then the excess will be applied as a credit to the installment which follows it (and which, *as of date of application,* automatically becomes the "next annual installment coming due").

Precedent for our view of ambiguity exists in *Kenney* v. *Los Feliz Investment Co.,* 121 Cal.App. 378 [9 P.2d 225], involving an oil properties purchase price note and deed of trust. There the note was not the personal obligation of the maker. The payee was required to look, as source of payment, either to certain oil royalties or to sale of the property securing the note on foreclosure. The note provided, however, that it would be in default if minimum monthly payments of $5,000 were not kept current (out of said royalties). As in the instant case, the note in *Kenney* contained a provision for prepayment of installments, stating that any receipts from royalties were to be applied first to interest and then to principal "on the next minimum payments due under said installment note." The same controversy arose between the parties there as has arisen here as to the proper interpretation of this clause. And there the trial court had taken a position that the language of this clause was so plain, certain, and unambiguous that extrinsic evidence of the surrounding facts and circumstances could not be considered. But, the trial judge asserted (and this is the very opposite of appellants' contention here), the *plain meaning* was that the obligor WAS entitled to have prepayments of royalties credited until exhausted against successive installments coming due. In reversing, the appellate court did not adopt the contrary interpretation, but held that the meaning of the clause was ambiguous, susceptible of two meanings, and the trial court, therefore, should have received extrinsic evidence to determine in which of the two senses the language had been employed by the parties.

It is a settled rule that when the language employed is fairly susceptible of either of two interpretations contended, there is an ambiguity and extrinsic evidence may be resorted to for the purpose of ascertaining the true meaning. (*Barham* v. *Barham,* 33 Cal.2d 416 [202 P.2d 289] ; *Balfour* v. *Fresno Canal & Irrigation Co.,* 109 Cal. 221 [41 P. 876] ; *Shelley* v. *Nichols,* 120 Cal.App.2d 602 [261 P.2d 771] ; *Kenney* v. *Los Feliz Investment Co., supra.)*

There was, therefore, no error here in the admission of the extrinsic evidence appearing in this record. This

evidence, related by two witnesses, one completely disinterested, consists of a conversation, with both parties present, leaving no doubt that the provision added to the note in question was intended in the sense contended for by respondent.

The judgment is affirmed.

Peek, P. J., and Schottky, J., concurred.