[Nos. C052573, C053481. Third Dist. June 28, 2007.]

POSEIDON DEVELOPMENT, INC., Plaintiff and Appellant, v. WOODLAND LANE ESTATES, LLC, Defendant and Respondent.

**COUNSEL**

Ishikawa Law Office, Brendon Ishikawa; Hoseit & Koelewyn and H. L. Koelewyn for Plaintiff and Appellant.

Kilpatrick Law Offices, Terence Kilpatrick; and Robert Craig Iseley for Defendant and Respondent.

**OPINION**

**HULL, J.**—Plaintiff, Poseidon Development, Inc. (Poseidon), brought this action against defendant, Woodland Lane Estates, LLC (Woodland), for breach of a promissory note following Woodland's late tender of a final balloon payment on the note. Poseidon seeks to recover a late charge of 10 percent of the final payment and expenses associated with initiating nonjudicial foreclosure proceedings. The trial court sustained Woodland's demurrers to the complaint without leave to amend, concluding Poseidon is not entitled to either form of relief, and entered judgment of dismissal. Poseidon appeals.

Following entry of judgment, the trial court granted Woodland's motion for costs and attorney fees. Poseidon appeals from that order as well.

On stipulation of the parties, we consolidated these appeals for all purposes.

We conclude the trial court correctly determined Poseidon is not entitled to the relief sought in the complaint. However, we further conclude the court

erred in sustaining demurrers to the complaint without leave to amend, inasmuch as Poseidon is entitled to recover actual damages suffered by reason of the late payment. We therefore reverse the judgment of dismissal. We also reverse the order granting Woodland's motion for costs and attorney fees.

### Facts and Proceedings

Since this is an appeal from a judgment of dismissal following an order sustaining demurrers, we summarize and accept as true all material factual allegations of the complaint unless refuted by matters properly subject to judicial notice. (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 7 [276 Cal.Rptr. 303, 801 P.2d 1054].)

On April 19, 2004, Woodland executed a promissory note in the amount of $770,000 in favor of Poseidon (the Note). The Note carried an interest rate of 10 percent and provided for monthly payments of interest only in the amount of $6,416.66. It also provided for a final payment of principal and unpaid interest on the earlier of March 1, 2005 or 90 days after approval of a tentative subdivision map on real property described in an attached exhibit.

In the event of default by Woodland, the Note provided for acceleration of the entire debt and payment by Woodland of Poseidon's expenses of collection, including attorney fees. It also provided for an increase in the interest rate owed on the remaining balance to the greater of 18 percent or 5 percent over prime. Finally, in the event any installment was not paid on time, the Note provided for a late charge of 10 percent of the overdue amount.

As security for the Note, Woodland executed a deed of trust to Chicago Title Company for the benefit of Poseidon on real property described in an attached exhibit (the Deed of Trust).

Woodland failed to make the final payment of principal and interest on the due date. On March 11, 2005, Poseidon recorded a notice of default and began collection proceedings, incurring attorney fees and costs in excess of $3,000. Woodland eventually made the final payment of principal and interest to Poseidon. However, Woodland refused to pay a late charge or the expenses of collection.

Poseidon initiated this action for breach of contract, alleging damages in the amount of $80,814, composed of a late charge of $77,000 and collection expenses of $3,814. Poseidon also sought damages for lost business opportunities, costs and attorney fees.

Woodland demurred to the complaint, and the trial court sustained the demurrers with leave to amend.

Poseidon filed a first amended complaint alleging the same claim for breach of contract but with further detail. Woodland again demurred and the trial court sustained the demurrers, this time without leave to amend. In its order, the trial court concluded the 10 percent late charge provision of the Note applied only to the interest payments, not the final, balloon payment. The court also concluded Poseidon is not entitled to costs of collection, as it was not authorized to initiate foreclosure proceedings, and could not recover damages for lost business opportunities.

The trial court entered judgment of dismissal and granted Woodland's motion for costs and attorney fees in the amount of $11,350.50.

DISCUSSION

I

*Introduction*

Poseidon contends the trial court erred in sustaining demurrers to the first amended complaint, because that pleading alleges all the elements necessary for a breach of contract claim. Poseidon argues the court was required to accept the allegations of the complaint as true and those allegations establish the parties' intent that the late charge provision apply to the final payment on the Note. Poseidon further argues that, even if it is not entitled to the late charge, it can recover actual damages caused by Woodland's breach. Finally, Poseidon argues it is entitled to recover expenses incurred in initiating nonjudicial foreclosure.

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) The complaint must be liberally construed and given a reasonable interpretation, with a view to substantial justice between the parties. (*Amarel v. Connell* (1988) 202 Cal.App.3d 137, 140–141 [248 Cal.Rptr. 276].) We treat as true

not only the complaint's material factual allegations, but also facts that may be implied or inferred from those expressly alleged. (*Id.* at p. 141.)

■ A cause of action for nonpayment on a promissory note is one for breach of contract. (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 383 [282 Cal.Rptr. 508].) Poseidon contends a cause of action for breach of contract requires four elements: (1) a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages. (See 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476, p. 570.) It is undisputed the first amended complaint adequately alleges the first three elements. This dispute centers on the fourth.

## II

### *Late Charge*

The Note contains the following late charge provision: "The maker acknowledges that late payment to payee will cause payee to incur costs not contemplated by this loan, the exact amount of such costs being difficult and impractical to assess. Such costs include, without limitation, processing and accounting charges. Therefore, if any *installment* is not received by payee when due, maker shall pay to payee an additional sum of 10% of the overdue amount as a late charge. The parties agree that this late charge represents a fair and reasonable estimate of the costs that payee will incur by reason of late payment. Acceptance of any late charge shall not constitute a waiver of the default with respect to the overdue amount, and shall not prevent payee from exercising any of the other rights and remedies available to payee, whether voluntary or involuntary." (Italics added.)

Poseidon contends the foregoing provision applies to the final balloon payment on the Note, because it refers to "any" installment and a final payment is as much an installment as any other payment. The trial court disagreed, concluding the final payment is not an "installment" as that term is used in the Note. We agree with the trial court.

■ "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over. [Citation.] If the court decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean?" (*Southern Cal. Edison Co. v. Superior*

*Court* (1995) 37 Cal.App.4th 839, 847–848 [44 Cal.Rptr.2d 227].) The overriding goal of contract interpretation is to give effect to the mutual intention of the parties at the time of contracting. (Civ. Code, § 1636; *Ticor Title Ins. Co. v. Employers Ins. of Wausau* (1995) 40 Cal.App.4th 1699, 1707 [48 Cal.Rptr.2d 368].)

■ Where contract language is clear and explicit and does not lead to absurd results, we normally determine intent from the written terms alone. (Civ. Code, § 1638.) Those terms are to be understood in their ordinary and popular sense, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage. (*Id.*, § 1644.)

■ In *Kenny v. Los Feliz Investment Co., Ltd.* (1932) 121 Cal.App. 378 [9 P.2d 225], the court stated: "The word 'installment' is one of common use and has a well-accepted meaning. Century Dictionary defines installment as 'Partial payments on account of a debt due.' Standard Dictionary gives this definition: 'A partial payment of a price or debt due.' Bouvier's Law Dictionary gives this definition: 'A part of a debt due by contract and agreed to be paid at a time different from that fixed for the payment of the other part.' " (*Id.* at pp. 384–385.) Under these definitions, a payment need only be part of the whole in order to be an "installment." It need not be equal to the other payments. (Accord, *Powell v. Central Cal. Fed. Sav. & Loan Assn.* (1976) 59 Cal.App.3d 540, 547 [130 Cal.Rptr. 635] ["[T]he term 'installment loan' was defined in 12 Code of Federal Regulations section 541.14 (23 Fed.Reg. 9890) as follows: 'The term "installment loan" means any loan repayable in regular periodic payments, equal or unequal, sufficient to retire the debt, interest and principal' "].) In *Mills v. Herrod* (1974) 37 Cal.App.3d 213, 217 [112 Cal.Rptr. 397], the court defined an installment as " 'one of several successive payments in settlement of a debt.' " No mention was made in that case of the relative values of each payment or whether it was the first, middle or last payment in the sequence.

Even a final balloon payment may be considered an installment. (See *Wyatt v. Union Mortg. Co.* (1979) 24 Cal.3d 773, 780 [157 Cal.Rptr. 392, 598 P.2d 45] ["[B]alloon payment is the amount necessary to amortize principal and interest unpaid at maturity when the prescribed monthly installments have been insufficient to do so"].) Title 7 Code of Federal Regulations, part 1941.18 (2007), which concerns the rates and terms of operating loans from the federal Department of Agriculture, states that installment payments "may include equal, unequal, or balloon installments." (7 C.F.R. § 1941.18(b)(4) (2007).)

██ However, the fact that a final balloon payment *may* be considered an installment within the common meaning of the term does not mean the parties so intended here. As noted above, we use the ordinary meaning of words unless the parties intended something else. (Civ. Code, § 1644.) Specific provisions of a contract should not be considered in isolation. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (*Id.,* § 1641.)

In the present matter, the Note provides that interest-only payments shall be made in monthly "installments" of $6,416.66 commencing June 1, 2004. However, a final "payment" of principal and unpaid interest shall be due on March 1, 2005 or 90 days after a tentative subdivision map is approved.

Elsewhere, the Note uses the word "payment" to encompass both the interest-only installments and the final payment. For example, the Note provides that each "payment" shall be credited first to interest due and then to principal and that whenever any "payment" is due on a Saturday, Sunday or holiday, it shall be made on the following business day. If any "payment" is late, the Note provides for an increased interest rate from the date payment was due until paid. These provisions easily apply to both the interest-only installments and the final payment.

By contrast, the Note provides that "[i]f default occurs in the payment of any installment under this note when due, . . . the entire principal sum and accrued interest shall at once become due and payable . . . ." This provision makes no sense when applied to the final payment, for which all principal and interest are already due and payable.

Poseidon argues the first amended complaint alleges the parties intended that the late charge provision apply to the final payment. Poseidon further argues the complaint alleges Woodland acknowledged this intent in a letter from Woodland's counsel indicating at least one of the principals of Woodland was willing to pay the late charge.

The allegation of the parties' intent is a conclusion of fact, which need not be accepted for purposes of demurrer. (See *Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) Furthermore, that allegation is belied by the plain language of the Note, as we have described. As for the purported acknowledgment, there are many reasons why a party might be willing to pay a sum to an opponent other than an admission of liability. Poseidon attempts to read too much into this correspondence.

■ In addition to the language of the Note, the trial court's interpretation saves the late charge provision from being an unlawful penalty. To avoid uncertainty and the cost of litigation if a breach occurs, the parties to a contract may include a liquidated damages clause to preset the measure of damages. (*Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1278 [114 Cal.Rptr.2d 898].) "[A] provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." (Civ. Code, § 1671, subd. (b).) Such a provision will be considered unreasonable if the amount specified bears no reasonable relationship to the range of actual damages the parties could have contemplated at the time of contracting. (*Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 977 [73 Cal.Rptr.2d 378, 953 P.2d 484].) "In the absence of such relationship, a contractual clause purporting to predetermine damages 'must be construed as a penalty.' " (*Ibid.*) " 'A contractual provision imposing a "penalty" is ineffective, and the wronged party can collect only the actual damages sustained.' " (*Ibid.*)

At the time of contracting, it is reasonable to assume the parties contemplated a late payment would result in Poseidon's loss of use of the amount due. However, the Note contains another provision granting Poseidon an enhanced interest rate in the event a payment is not made on time. This would more than compensate Poseidon for the loss of use of the money due.

The late charge provision was never intended to compensate Poseidon for loss of use of the money due. It provided that, in the event an installment becomes overdue, a late charge might be imposed to cover such costs as "processing and accounting charges." Hence, the purpose of the late charge provision was to compensate Poseidon for administrative expenses.

■ There is no reason to believe that processing and accounting expenses caused by failure to make an installment payment would vary appreciably depending on the amount of the overdue payment. Nevertheless, while overdue payment of an installment of $6,416.66 would have resulted in a late charge of $641.67, overdue payment of a final payment of $776,416.66 would result in a late charge of $77,641.67. If the late charge provision was intended to apply to both interim installments and the final payment, it could not possibly be considered a reasonable estimate of the damages contemplated by a breach. Rather, it would be an unenforceable penalty provision.

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it

can be done without violating the intention of the parties." (Civ. Code, § 1643.) The only interpretation of the late charge provision that would make it lawful, operative, definite, reasonable, and capable of being carried out is one that would make it inapplicable to the final payment. Such interpretation is also consistent with the language of the Note read as a whole.

Poseidon contends validity of the late charge provision as applied to the final payment cannot be determined on demurrer, because that issue depends upon evidence of the customary range of late fees in similar promissory notes. However, we can state as a matter of law a late charge provision covering administrative expenses that amounts to $641.67 for one late payment and $77,641.67 for another is not a reasonable attempt to estimate actual administrative costs incurred, whether or not it is customary in the industry. We therefore conclude Poseidon is not entitled to a late charge as an element of damages.

## III

### *Collection Expenses*

In its order sustaining demurrers, the trial court took judicial notice of various recorded documents related to the deed of trust securing the Note. In particular, the court took judicial notice of (1) the Deed of Trust, recorded April 19, 2004; (2) an assignment of the Note and Deed of Trust from Poseidon to Spartan Mortgage Services, Inc. (Spartan), recorded June 14, 2004 (the First Assignment); (3) an assignment of the Note and Deed of Trust from Spartan to Thomas P. Shanley, Trustee of the Shanley Living Trust (Shanley), recorded July 9, 2004 (the Second Assignment); (4) a substitution of trustee by Shanley, replacing Chicago Title Company with Red Shield Servicing, Inc. (Red Shield), recorded July 16, 2004 (the First Substitution); (5) a substitution of trustee by Poseidon, replacing Chicago Title Company with Damon Mamalis, recorded February 25, 2005 (the Second Substitution); and (6) a notice of default and election to sell under deed of trust signed by Damon Mamalis, recorded February 25, 2005 (the Notice of Default).

The trial court concluded Poseidon "is not entitled to recover fees incurred for foreclosure as it had assigned the deed of trust and had no right to initiate foreclosure proceedings." In effect, the court concluded that, by virtue of the First Assignment, Poseidon gave up its right to demand that Chicago Title Company foreclose on the property subject to the Deed of Trust or replace Chicago Title Company with another trustee. That right passed to Spartan in the First Assignment, which in turn passed it to Shanley in the Second

Assignment. Shanley then substituted Red Shield as trustee. At that point, any foreclosure would have to be initiated by Red Shield at the request of Shanley. Poseidon had no right to substitute Damon Mamalis as trustee and Mamalis had no right to initiate foreclosure.

Poseidon contends the trial court erred in relying on judicial notice to resolve a factual dispute as to whether Poseidon remained the beneficiary on the Note and Deed of Trust. Poseidon argues a court might take judicial notice of recorded documents, but not the truth of the matters stated therein. Poseidon further argues the trial court violated this principle by accepting the truth of the First Assignment, wherein Poseidon gave up its beneficial interest in the Note and Deed of Trust, to disprove the Second Substitution, wherein Poseidon substituted Damon Mamalis as the trustee.

■ " 'Judicial notice is the recognition and acceptance by the court, for use by the trier of fact or by the court, of the existence of a matter of law or fact that is relevant to an issue in the action without requiring formal proof of the matter.' " (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882 [110 Cal.Rptr.2d 877].) "In determining the sufficiency of a complaint against demurrer a court will consider matters that may be judicially noticed." (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374 [228 Cal.Rptr. 878].) A court may take judicial notice of something that cannot reasonably be controverted, even if it negates an express allegation of the pleading. (*Columbia Casualty Co. v. Northwestern Nat. Ins. Co.* (1991) 231 Cal.App.3d 457, 468–469 [282 Cal.Rptr. 389].) This includes recorded deeds. (*Maryland Casualty Co. v. Reeder* (1990) 221 Cal.App.3d 961, 977 [270 Cal.Rptr. 719].)

However, the fact a court may take judicial notice of a recorded deed, or similar document, does not mean it may take judicial notice of factual matters stated therein. (See *Kilroy v. State of California* (2004) 119 Cal.App.4th 140 [14 Cal.Rptr.3d 109].) For example, the First Substitution recites that Shanley "is the present holder of beneficial interest under said Deed of Trust." By taking judicial notice of the First Substitution, the court does not take judicial notice of this fact, because it is hearsay and it cannot be considered not reasonably subject to dispute.

Poseidon contends the court also should not take judicial notice of the *effect* of the recorded document. For example, in the case of the First Assignment, Poseidon contends it is not proper to take judicial notice that this document transferred beneficial interest in the Note and Deed of Trust to Spartan. Poseidon argues this is a matter that remains subject to dispute.

We disagree in part. In arguing that the issue of whether Poseidon retained beneficial interest in the Note and Deed of Trust remains subject to dispute, Poseidon relies on paragraph 11 of the first amended complaint. It alleges: "Although [Poseidon] used said note as collateral for the obtaining of certain loans, [Poseidon] at all times remained the beneficial and true owner of the note, subject to certain collateral assignments which were security for the payment of loans obtained by [Poseidon] from third parties. [Poseidon] has always remained the true and rightful owner of the note with the power to foreclose on the deed of trust . . . ."

This allegation conflicts with the language of the First Assignment, which states: "For Value Received, the undersigned hereby grants, assigns and transfers to [Spartan] all beneficial interest under that certain Deed of Trust dated April 16, 2004 executed by [Woodland]" "[t]ogether with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust." The First Assignment is signed by Damon Mamalis, on behalf of Poseidon.

Poseidon does not dispute the validity of the First Assignment, only its effect. However, its legal effect could not be clearer. It is not reasonably subject to dispute that, whatever else occurred, Poseidon gave up and no longer held the beneficial interest under the deed of trust. Poseidon's argument that the trial court erred in taking judicial notice of the *effect* of the First Assignment is comparable to saying that, while a court may take judicial notice of a judicial decision awarding damages, it may not take judicial notice that the effect of that decision is to make the prevailing party entitled to the damages awarded.

Here, the First Assignment, Second Assignment, and First Substitution predated the Second Substitution and the Notice of Default. Following the First Assignment, Poseidon no longer had the power to substitute the trustee of the Deed of Trust. Thus, while the effect of the Second Substitution standing alone would be to replace Chicago Title with Damon Mamalis as trustee, this effect is nullified by the effect of the earlier recorded documents.

Because Poseidon gave up its right to replace the trustee and initiate foreclosure when it assigned the Note and Deed of Trust to Spartan, it had no power to initiate foreclosure proceedings and is not entitled to recover the cost of doing so from Woodland.

## IV

### *Actual Damages*

Woodland does not contend, and therefore we do not consider, whether the First Assignment divested Poseidon of the power to enforce the Note. Hence, we proceed to the question of whether Poseidon is entitled to any damages for nonpayment on the Note.

As noted above, the first amended complaint alleges three categories of damages: (1) a late charge, (2) expenses of foreclosure proceedings, and (3) lost business opportunities. The trial court concluded Poseidon is not entitled to any of these damages. We agree as to the first two categories, and Poseidon does not dispute the court's conclusion on the third. Nevertheless, unlike the trial court, we do not believe the demurrers should have been sustained without leave to amend.

Granted, the trial court gave Poseidon leave to amend after sustaining demurrers to the original complaint. In its ruling, the court stated Poseidon is not entitled to a late charge or expenses of foreclosure proceedings, but would be entitled to interest from the date the final payment was due until it was paid. The court granted Poseidon leave to amend "to assert a claim for interest and fees consistent with the note and deed of trust."

Poseidon failed to follow the trial court's direction and, instead of alleging interest damages, reiterated its claim for the late payment and foreclosure expenses, albeit with more detail. Presumably, this is why the court sustained demurrers to the first amended complaint without leave to amend. Poseidon had been given clear instructions on how to amend but chose to ignore them.

Nevertheless, we conclude it was an abuse of discretion to deny leave to amend. When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)

"For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Civ. Code, § 3300.) "The detriment caused by the breach of an obligation to pay money only, is

deemed to be the amount due by the terms of the obligation, with interest thereon." (*Id.*, § 3302.)

Here, it is undisputed Poseidon is entitled to interest from the date final payment was due until it was paid. There is nothing in the record to suggest any such interest was paid by Woodland. Poseidon may also be entitled to other damages in the nature of administrative expenses. Under these circumstances, it was an abuse of discretion to deny Poseidon an opportunity to amend the complaint to allege such damages. However, we caution that Poseidon has been given one opportunity to amend the complaint to state a claim for unpaid interest and failed to do so. It is now being given another chance. This shall be the last.

## V

### Costs and Attorney Fees

Poseidon contends that, because the trial court erred in sustaining demurrers to the first amended complaint, the award of costs and attorney fees to Woodland also cannot stand. We agree. Because we reverse the judgment in favor of Woodland, the award of costs and attorney fees based on that judgment must also be reversed.

Poseidon further contends that, because Woodland concedes liability for interest from the date the final payment was due until it was paid, Poseidon is the prevailing party entitled to attorney fees. Not necessarily.

In an action for breach of contract, Civil Code section 1717 permits an award of costs and attorney fees to the prevailing party. "[T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section." (Civ. Code, § 1717, subd. (b).) The prevailing party determination can be made "only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.'" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 [39 Cal.Rptr.2d 824, 891 P.2d 804].) The "greater relief" obtained by a party does not necessarily mean greater monetary relief. (*Acree v. General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 400 [112 Cal.Rptr.2d 99].)

The determination of prevailing party status must await final resolution of this matter.

### DISPOSITION

The judgment of dismissal is reversed and the matter is remanded to the trial court with directions to vacate its order sustaining demurrers to the first amended complaint *without* leave to amend and to enter a new order sustaining those demurrers *with* leave to amend. The order granting Woodland's motion for costs and attorney fees is also reversed. The matter shall proceed in accordance with the views expressed in this opinion. The parties shall bear their own costs on appeal.

Morrison, Acting P. J., and Cantil-Sakauye, J., concurred.

On July 24, 2007, the opinion was modified to read as printed above.