Filed 9/15/22  Paredes v. Trinity Financial Services CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LIDIA S. PAREDES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TRINITY FINANCIAL SERVICES, LLC,<br><br>    Defendant and Respondent. | B314182<br><br>(Los Angeles County<br>Super. Ct. No. KC070387) |

APPEAL from judgment of the Superior Court of Los Angeles County, Peter A. Hernandez, Judge.  Affirmed.

Tamer Law Corp. and Steven Michael Tamer, for Plaintiff and Appellant.

AlvardoSmith, S. Christopher Yoo and Jacob M. Clark, for Defendant and Respondent.

———————————————

Plaintiff and appellant Lidia S. Paredes appeals a judgment of dismissal in favor of defendant and respondent Trinity Financial Services, LLC (Trinity).  The trial court entered the judgment after sustaining Trinity's demurrer to plaintiff's first amended complaint without leave to amend.

Paredes argues the trial court erroneously sustained Trinity's demurrer because her first amended complaint states a cause of action under the California Homeowner Bill of Rights (HBOR).  She also argues the trial court abused its discretion by denying her leave to amend her complaint.  Alternatively, Paredes asks this court to grant her leave to amend.

We hold the first amended complaint does not state a cause of action and that the trial court did not abuse its discretion in denying Paredes leave to amend.  We also decline to grant Paredes leave to amend because she has not shown a reasonable possibility that she can cure the defects in her complaint.

## BACKGROUND

### A.    *Facts*[1]

Paredes owned residential real property in La Puente.  She used the property as collateral for two loans she obtained from

---

[1]    These facts are derived from the face of the first amended complaint and judicially noticed documents.  Pursuant to Trinity's request, the trial court took judicial notice of ten documents, including documents recorded in the Los Angeles County Recorder's Office.  A trial court generally cannot take judicial notice of the facts stated in deeds of trust or similar recorded documents.  (*Poseidon Development, Inc. v. Woodland Lane Estates,* LLC (2007) 152 Cal.App.4th 1106, 1117 (*Poseidon*).)  But the court may take judicial notice of the existence, recordation, and legal effect of these documents.  (*Id.* at pp. 1117–

First Franklin, a division of National City Bank of Indiana (First Franklin). On December 29, 2005, she executed two promissory notes to First Franklin, one for $368,000 and a second for $92,000.

Each note was secured by a deed of trust recorded in the county recorder's office on January 5, 2006. The deeds of trust state that Mortgage Electronic Registration System (MERS) is the nominee of the lender and beneficiary of the security instrument. The deeds of trust further state that Security Union Title Insurance Company (Security Union) is the trustee.

In 2016, MERS caused to be recorded an assignment of deed of trust. This document states that First Franklin assigns its interest in the second deed of trust to Trinity. Trinity became the mortgage servicer for the $92,000 loan.

"In early 2017," Paredes "began suffering financial difficulty due to lower income, and exhausted all of her economic resources to keep up with her financial obligations."

On August 23, 2017, Trinity recorded two documents. The first was a substitution of trustee that states Special Default Services, Inc. (SDSI) replaced Security Union as the trustee of the second deed of trust securing the $92,000 promissory note. The second was a notice of default on the second loan. The notice stated that the balance due on the second loan was $106,721.86 as of August 21, 2017.

Paredes "immediately contacted" Trinity to advise the company of her "financial difficulty and to request any available

1118; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264–265, disapproved on other grounds by *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, fn. 13 (*Yvanova*).)

assistance in avoiding foreclosure." Trinity "confirmed that the company had options to avoid foreclosure that were available to" Paredes. Paredes "submitted numerous documents" to Trinity.

On November 30, 2017, SDSI recorded a notice of trustee's sale. This notice stated that SDSI would hold a public auction of plaintiff's property.

Paredes then consulted with a non-profit association that helped homeowners who faced nonjudicial foreclosure. On December 18, 2017, with the assistance of the non-profit entity, Paredes submitted a loan modification application to Trinity. At the time Paredes submitted this application, her "financial difficulty had ceased" and she "had the means to support a modified payment schedule."

On January 26, 2018, Trinity purchased Paredes' property at a public auction as the highest bidder. The recorded purchase price was $201,974.27. Shortly thereafter, Trinity recorded a trustee's deed upon sale.

## B. *Procedural History*

In June 2018, Paredes filed the complaint that initiated this action. The trial court granted Trinity's motion for judgment on the pleadings challenging the complaint. Paredes then filed her first amended complaint. Trinity again challenged Paredes' operative complaint, this time by demurrer. After sustaining Trinity's demurrer without leave to amend, the court entered a judgment of dismissal in Trinity's favor. Paredes timely appealed the judgment.

## STANDARD OF REVIEW

We review the first amended complaint de novo to determine whether it states facts sufficient to constitute a cause

4

of action. (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 292 (*Morris*).) We review the trial court's denial of plaintiff's request for leave to amend her complaint for abuse of discretion. (*Ibid.*) "Under both standards, the plaintiff has the burden of demonstrating trial court error." (*Id.* at pp. 292–293.)

"In determining the merits of a demurrer, all material facts pleaded in the complaint and those that arise by reasonable implication, but not conclusions of fact or law, are deemed admitted by the demurring party." (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517.) "We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111.)

## DISCUSSION

Trinity foreclosed on plaintiff's property pursuant to the statutes governing nonjudicial foreclosures. (See Civil Code § 2920 et seq.)[2] The HBOR is a complex set of enactments codified within the nonjudicial foreclosure statutory scheme. (*Morris*, *supra*, 78 Cal.App.5th at p. 295.)

The HBOR is "focused specifically on residential mortgages and passed as a legislative response to the ongoing mortgage foreclosure crisis in 2012. (§§ 2920.5, 2923.4–2923.7, 2924, 2924.9–2924.12, 2924.15, 2924.17–2924.20; Stats. 2012, ch. 86, §§ 2–23; Stats. 2012, ch. 87, §§ 2–23.)" (*Morris*, *supra*, 78 Cal.App.5th at p. 295.) It is "principally designed to ensure that 'as part of the nonjudicial foreclosure process, borrowers are

---

[2]     Unless otherwise stated, all statutory references are to the Civil Code.

considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure.' [Citations.]" (*Ibid.*)

I. ***The First Amended Complaint Fails to State Facts Sufficient to Constitute a Cause of Action***

All of Paredes' causes of action are based on Trinity's alleged violations of the HBOR. In her opening brief, Paredes argues Trinity violated (1) section 2923.5, subdivision (a)(1) by recording the notice of default before contacting Paredes in person or by telephone; (2) section 2923.6, subdivision (b) by failing to review her modified loan application; and (3) section 2923.7 by failing to assign a single point of contact to review her application.

These claims do not completely align with Paredes' first amended complaint. Her second cause of action is for wrongful foreclosure, a common law tort that may be based on a statutory violation. (See *Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 561.) This cause of action and Paredes' fourth cause of action are based on Trinity's alleged violation of section 2923.5, subdivision (a). Paredes' fifth cause of action is for Trinity's alleged violation of section 2923.7. Paredes does not allege in her first amended complaint that Trinity violated section 2923.6, subdivision (b), but she does allege the underlying facts she discusses on appeal.

We review Paredes' three theories of recovery irrespective of the causes of action set forth in her first amended complaint. "If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer."

6

(*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38.) We thus " 'must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory.' [Citation.]" (*Ibid.*)

The first amended complaint fails to state facts sufficient to constitute a cause of action under all three of plaintiff's theories. This is because the HBOR expressly states the claims asserted by Paredes only apply to first lien loans and deeds of trust.

With exceptions that do not apply here, former section 2924.15, subdivision (a) provides that sections 2923.5, 2923.6, and 2923.7 "shall apply only to a first lien mortgages or deeds of trust" that meet certain criteria.[3]

Section 2923.5, subdivision (a)(1)(B) provides that a mortgage servicer may not record a notice of default until it "complies with paragraph (1) of subdivision (a) of Section 2924.18." Section 2924.18, subdivision (a)(1), in turn, states that if a borrower submits a "complete application for a first lien modification" at least five days before a foreclosure sale, the mortgage servicer has certain obligations. When read together, the two statutes only apply to a mortgage servicer's obligations relating to a first lien.

---

[3] Trinity's alleged wrongdoing occurred in 2017 and perhaps the beginning of 2018. This quote is from former section 2924.15, subdivision (a), which was in effect in 2017 and 2018. (Stats. 2012, ch. 87, § 18.) The language of this provision has been since modified in a non-substantive way. (Stats. 2020, ch. 37, § 11.) After reviewing the relevant portions of the HBOR that were in effect in 2017 (Stats. 2012, ch. 87, §§ 4, 6–7, 9, 21) and the amendments to them in 2018 (Stats. 2012, ch. 87, §§ 8, 19; Stats. 2018, ch. 404, §§ 4, 7, 19, 23) and 2020 (Stats. 2020, ch. 37, § 11), we conclude none of the amendments change our analysis.

Likewise, section 2923.6, subdivision (g) provides: "In order to minimize the risk of borrowers submitting multiple applications for *first lien loan* modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have been evaluated . . . unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer." (Italics added.) Section 2923.6, subdivision (j) further provides: "This section shall apply only to mortgages or deeds of trust described in Section 2924.15." As explained, section 2924.15, subdivision (a) states section 2923.6 only applies to first lien mortgages and deeds of trust.

" 'First lien' means the most senior mortgage or deed of trust on the property that is the subject of the notice of default or notice of sale." (§ 2920.5, subd. (d).)

Here, the deed of trust on the $92,000 loan is attached to the first amended complaint. The document states on the top of the first page that the deed of trust is a "Secondary Lien." On the bottom of each page runs a footer stating: "CALIFORNIA DEED OF TRUST—Single Family—Secondary Lien."

Paredes also attached to her first amended complaint a California Declaration of Compliance recorded by Trinity at the same time it recorded its notice of default. This declaration was executed pursuant to section 2923.55, subdivision (c), which provides that a mortgage servicer is required to contact a "borrower," as defined by statute, prior to recording a notice of default. The definition of "borrower" does not include a person who borrowed money secured by a second lien. (See § 2920.5, subds. (b) [" 'Foreclosure prevention alternative' means a first

8

lien loan modification or another available loss mitigation option"] & (c)(1) [borrower means any mortgagor or trustor who is potentially eligible for any "foreclosure prevention alternative program"].)

The California Declaration of Compliance recorded by Trinity and attached to the first amended complaint states: "No contact was made with the Borrower pursuant to Civil Code § 2923.55 *because the above-referenced loan is not secured by a first lien* mortgage or deed of trust that secures a loan described in Civil Code § 2924.15 (a)." (Italics added.)

It is therefore clear from the face of the exhibits attached to the first amended complaint that Trinity foreclosed on a second deed of trust. The body of the first amended complaint does not allege anything to the contrary.

Conspicuously absent from the first amended complaint is any mention of the $368,000 loan and the deed of trust securing it. Paredes does not deny the existence of this loan and deed of trust.

The judicially noticed documents filed in the county recorder's office also indicate that Trinity foreclosed on a second lien. The deeds of trust securing the $368,000 loan and $92,000 loan were recorded as document numbers 06 0020212 and 06 0020213, respectively, at 8:00 a.m. on January 5, 2006. The lender thus first recorded the deed of trust for the $368,000 loan, and then immediately thereafter recorded the deed of trust for the $92,000 loan. While the deed of trust securing the $92,000 loan states it is a "Secondary Lien," no similar language is found on the deed of trust securing the $368,000 loan.

In sum, Paredes claims on appeal the first amended complaint states causes of action based on violations of sections

9

2923.5, 2923.6, and 2923.7.  But Parades' operative complaint fails to state facts sufficient to support any of these claims because Trinity did not foreclose on a first lien.

The first amended complaint also purports to set forth causes of action for violations of sections 2934a and 2924.11 and Business and Professions Code section 17200.  Paredes does not, however, make any arguments in her brief regarding these causes of action.  She therefore forfeits any claim of error.  (*Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 817.)

## II. *Paredes Did Not Meet Her Burden of Showing the Trial Court Abused its Discretion by Denying Her Leave to Amend*

When a demurrer to a complaint is sustained without leave to amend, the trial court must grant the plaintiff leave to amend if there is a "reasonable possibility that the defect can be cured by amendment." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  The "burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*)  To meet her burden the plaintiff "must show in what manner the complaint could be amended and how the amendment would change the legal effect of the complaint, i.e., state a cause of action." (*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 992.)

Paredes argues the trial court "incorrectly" sustained Trinity's demurrer "*without* leave to amend."  In her opposition to Trinity's demurrer, Paredes discussed Trinity's alleged violation of section 2923.6, a claim she did not clearly make in her first amended complaint.  Paredes did not, however, explain how, if at all, she would amend her complaint to state a viable section 2923.6 cause of action.

10

At the conclusion of her opposition to Trinity's demurrer, Paredes stated: "[I]f the Court finds that one or more of Plaintiff's causes of action have not been properly pled, Plaintiff respectfully requests leave of court to amend her Complaint." But again Paredes did not explain to the trial court how the first amended complaint could be amended to cure its defects.[4] Accordingly, at the time the trial court sustained Trinity's demurrer, it did not abuse its discretion.

### III. *We Decline to Grant Paredes Leave to Amend Because She Has Not Shown There is a Reasonable Possibility That She Can Cure the Defects in Her Complaint*

Paredes requests this court to grant her leave to amend. "A request for leave to amend may be made for the first time on appeal." (*Jensen v. The Home Depot, Inc.* (2018) 24 Cal.App.5th 92, 97.)

In her opening brief, Paredes does not provide a coherent explanation of how her first amended complaint can be amended to cure its defects. Paredes does not substantively discuss the first loan and first deed of trust. Instead, she merely makes the following conclusory statement: "Appellant has alleged that the loan in question was a first loan mortgage and therefore eligible for the protections of the HBOR. Respondent claims the loan was a junior loan."

---

[4] The parties did not provide a reporter's transcript of the argument at the hearing. Paredes does not claim on appeal that she made an oral request for leave to amend in the trial court.

11

Paredes did *not* allege in her first amended complaint the $92,000 loan was a "first loan mortgage." Moreover, Paredes cannot amend her complaint to make such an allegation.

Our assumption about the truth of facts alleged in the complaint has its limits. Courts "will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed." (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.) If the plaintiff alleges facts contracted by exhibits attached to the complaint, the facts stated in the exhibits will be given precedence. (*Moran v. Prime Healthcare Management, Inc.* (2016) 3 Cal.App.5th 1131, 1145–1146; *Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505.) The plaintiff is also barred from alleging facts contradicted by judicially noticed recorded documents. (See *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 536, disapproved on other grounds by *Yvanova*, *supra*, 62 Cal.4th at p. 939, fn. 13; accord *Poseidon*, *supra*, 152 Cal.App.4th at pp. 1117–1118.)

The deeds of trust and other recorded documents attached to Paredes' first amended complaint and Trinity's request for judicial notice plainly show that Trinity foreclosed on a second lien, not a first lien. Paredes has not and cannot show a reasonable possibility that she can amend her complaint to circumvent this fatal defect.

12

## DISPOSITION

The judgment is affirmed.  Respondent Trinity Financial Services, LLC is awarded its costs on appeal.

NOT TO BE PUBLISHED.

TAMZARIAN, J. [*]

We concur:

RUBIN, P. J.

MOOR, J.

---

[*]    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.